**Page 1**

```
           IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF IOWA
                    CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )    NO. 20-CR-108
                             )
       vs.                   )
                             )
MATTHEW SHAWN VICTOR BRIDGES, )
                             )
            Defendant.       )

        Hearing in this matter was held on the
30th day of June, 2022, commencing at 2:58 p.m.,
before the Honorable C.J. Williams in U.S. District
Court for the Northern District of Iowa, 111 Seventh
Avenue, SE, Cedar Rapids, IA  52401.

              A P P E A R A N C E S

For the United States:

        KYNDRA LUNDQUIST
        Assistant United States Attorney
        United States Attorney's Office
        111 Seventh Avenue, SE
        Cedar Rapids, IA  52401

For the Defendant:

        MURDOCH WALKER, II
        Attorney at Law
        Lowther Walker, LLC
        101 Marietta Street, NW, Suite 3325
        Atlanta, GA  30303

Also Present:  Stacy Sturdevant [via phone]
               United States Probation Office


        Ellen Tucker, CSR, RMR, CRR
        Certified Shorthand Reporter
        Cedar Rapids, IA  52402
              319-899-9456
```

**Page 2**

P R O C E E D I N G S

THE COURT: Please be seated. All right. The matter now before the Court is United States of America versus Matthew Shawn Victor Bridges, criminal case number 20-CR-108.

This matter comes on for a sentencing hearing. The United States is represented by Assistant United States Attorney Kyndra Lundquist. The defendant is personally present and represented by Defense Attorney Murdoch Walker, II.

Participating by telephone is Stacy Sturdevant. She is the United States probation officer who authored the Presentence Investigation Report filed at document 148 in the Court's file.

On September 7th, 2021, the defendant pled guilty to three counts of a six-count indictment. He pled guilty to Count 1, which charged him with conspiracy to distribute 50 grams or more of actual pure methamphetamine. This was in violation of Title 21, United States Code, Sections 481(a)(1), 481(b)(1)(A), and 846.

He also pled guilty to Counts 3 and 6, each of which charged on separate occasions possession of a firearm by a felon. This was in violation of Title 18, United States Code,

**Page 3**

Sections 922(g)(1) and 924(a)(2).

By statute, those offenses are punishable as follows: Count 1 is punishable by a 10-year mandatory minimum sentence and up to life in prison without the possibility of parole. Counts 3 and 6 are each punishable by up to 10 years in prison without the possibility of parole.

After the defendant has served his prison sentence, the Court will place him on a term of supervised release. On Count 1, that supervised release will be at least five years, and it can be up to life on supervised release. On Counts 3 and 6, the Court can place him on supervised release for up to three years each. Probation is not an option under the statutes.

The Court can impose a fine on Count 1 of up to $10 million and on Counts 3 and 6 up to $250,000 per count. Then the Court must impose a mandatory special assessment of $100 on each count of conviction for a total of $300.

Ms. Lundquist, on behalf of the United States, have you had full and fair opportunity to review this presentence report?

MS. LUNDQUIST: Yes, Your Honor.

THE COURT: Does the Government have any

**Page 4**

objection to the calculation of the advisory guideline range or anything else in that report?

MS. LUNDQUIST: No, Your Honor.

THE COURT: But I do note that the parties have reached a joint notice regarding the sentencing which I view as kind of a sentencing agreement. It's filed at document 155. And in that, I understand the Government is not seeking an enhancement for threat of violence; is that correct?

MS. LUNDQUIST: That is correct, Your Honor.

THE COURT: All right. Any other record you want to make regarding the sentencing agreement?

MS. LUNDQUIST: No, Your Honor.

THE COURT: All right. Mr. Murdoch?

MR. WALKER: Your Honor, there were initial objections, as I'm sure the Court saw, in the PSR.

THE COURT: Yes.

MR. WALKER: We have since resolved all of those objections by virtue of that joint stipulation.

THE COURT: And, Mr. Walker, I'm sorry. I said Mr. Murdoch. I meant Mr. Walker.

MR. WALKER: That's okay.

THE COURT: Okay. I understood that. And

5

1  I think originally he had some objections at
2  paragraphs 5, 9, 12, 18, 20, and 22. But what you're
3  saying, as part of this agreement, he's withdrawing
4  all of those objections?
5      MR. WALKER: Your Honor, there has been
6  just a lot of negotiation back and forth between the
7  Government and I. And, frankly, it was more of
8  ironing out all of the details.
9      But there were objections initially as
10 were agreed to in the plea agreement preserved. Base
11 offense level, the possession of the firearm, use of
12 violence, role in the offense, and then acceptance
13 were the five applicable provisions.
14     The ones that were changed, Your Honor,
15 were -- there was a stipulation to the base offense
16 level as initially determined by the United States
17 probation office. The possession of the firearm
18 remained. The use of violence was withdrawn. And
19 the role in the offense, Your Honor, was reduced by
20 one, from a 3 level to a 2.
21     THE COURT: Understood. Very good.
22     Could you make a brief record, Mr. Walker,
23 of how you went through this report and the agreement
24 with your client without revealing, of course,
25 attorney-client communication? But can you just go

6

1  over how it is you communicated with your client
2  about these matters?
3      MR. WALKER: Sure. Your Honor, actually,
4  Mr. Bridges and I have known each other for a long
5  time at this point, and we've spoken countless times
6  in the pretrial phase with regard to the proposed
7  plea agreements.
8      And AUSA Pat Reinert and I have worked
9  out a lot of the stipulations to kind of reserve
10 those issues to be kind of ironed out in the
11 post-conviction/presentence phase. Those have been
12 ironed out, and Mr. Bridges was a part of several
13 conferences with myself. And, of course, I had those
14 with the Government.
15     We went over the initial PSR essentially
16 line by line, rendered those objections under an
17 agreement to do that, and then they were subsequently
18 resolved. Mr. Bridges is aware of those objections
19 and the resolution of those objections, and we
20 consider it a fully resolved PSR at this point.
21     THE COURT: All right. Very good. Thank
22 you, Mr. Walker.
23     Mr. Bridges, did you have an opportunity
24 to go through this presentence report on your own,
25 sir?

7

1      THE DEFENDANT: What's that?
2      THE COURT: Did you have an opportunity,
3  sir, to go through this report on your own?
4      THE DEFENDANT: Yes, sir.
5      THE COURT: And do you feel like you've had
6  enough time to discuss this with Mr. Walker?
7      THE DEFENDANT: Yes, Your Honor.
8      THE COURT: Do you have any questions --
9  Well, let me ask you, first of all, was Mr. Walker
10 able to answer any questions you had originally about
11 this presentence report?
12     THE DEFENDANT: Yes, Your Honor.
13     THE COURT: Do you have any questions today
14 about this presentence report?
15     THE DEFENDANT: No, Your Honor.
16     THE COURT: Now, you've heard both the
17 Government and Mr. Walker talk about this sentencing
18 agreement that's been reached, and that's the
19 sentencing agreement you understand you have reached
20 with the Government, as well?
21     THE DEFENDANT: Yes, Your Honor.
22     THE COURT: All right. And you understand
23 I'm not bound by that and you don't have to reach
24 that kind of agreement. Do you understand that?
25     THE DEFENDANT: Yes, Your Honor.

8

1      THE COURT: All right. I will tell you
2  it is my practice that when the Government and a
3  defendant reach a sentencing agreement, so long as
4  I don't find it to be an unreasonable one, I tend to
5  adopt those sentencing agreements even though I am
6  not obligated to do so. And here I don't find this
7  agreement to be unreasonable, and so I intend to
8  adopt it.
9      But it's important for you to understand
10 if you want to, you could maintain your objections
11 and I'd have to make a decision on the contested
12 issues. And you understand you would have that
13 right?
14     THE DEFENDANT: Yes, Your Honor.
15     THE COURT: All right. With that
16 background, let's turn then to the calculation of the
17 advisory guidelines as determined by the probation
18 office. And as I go through that determination,
19 I will note how these calculations would change in
20 light of the parties' agreement here.
21     So this calculation begins on page 13 of
22 the presentence report. At paragraph 18, the
23 probation office has assessed the defendant with a
24 base offense level of 38 based on drug quantity.
25 Based on information obtained, Probation has found the

9

1  defendant responsible for 6.804 kilograms of ice
2  methamphetamine. This is more than 4.5 kilograms,
3  which calls for a base offense level of 38 under
4  Guideline Section 2D1.1(c)(1).
5        Then at paragraph 19, the probation
6  office has assessed the defendant with a two-level
7  enhancement for possession of a firearm or other
8  dangerous weapon in connection with this offense.
9  This is under Guideline Section 2D1.1(b)(1).
10       Now, at paragraph 20, the probation office
11 had assessed the defendant with a two-level
12 enhancement for using violence under Guideline
13 Section 2D1.1(b)(2), but the Government as part of
14 the sentencing agreement has agreed not to present
15 any evidence on that contested issue and is not
16 seeking an enhancement, so there would be no
17 enhancement applied at paragraph 20 under the
18 parties' agreement.
19       At paragraph 22, the probation office
20 had assessed the defendant with a three-level
21 enhancement for role in the offense under Guideline
22 Section 3B1.1(b). But, again, pursuant to the
23 parties' agreement, they have agreed to a role
24 enhancement but of only two levels instead of three
25 levels, so there would be a two-level enhancement at

10

1  paragraph 22.
2        As calculated by the probation office,
3  defendant would have had an adjusted offense level
4  of 45. But under the parties' agreement, that
5  adjusted offense level is now 42.
6        The defendant has pled guilty to this
7  offense, and so the probation office has awarded him
8  with a two-level reduction for acceptance of
9  responsibility under Guideline Section 3E1.1(a).
10       Ms. Lundquist, what is the Government's
11 position about whether the defendant should receive
12 an additional one-level reduction for acceptance
13 under Guideline Section 3E1.1(b)?
14       MS. LUNDQUIST: Per the parties' agreement,
15 the Government moves for that third level, Your
16 Honor.
17       THE COURT: The Court grants that. And
18 so with three levels off for acceptance of
19 responsibility under the probation office
20 calculation, the defendant would have ended up
21 with a total offense level of 42; but under the
22 parties' agreement, that would result in a total
23 offense level of 39.
24       The defendant has some criminal history
25 which the probation office has summarized starting

11

1  beginning at paragraph 29 and carrying over to
2  paragraph 51.
3        The defendant's prior convictions have
4  resulted in 10 criminal history points. Because the
5  defendant committed the instant offense while he was
6  under a criminal justice sentence, two additional
7  points are added for a total of 12 criminal history
8  points, placing defendant in Criminal History
9  Category V.
10       So as calculated by the probation office,
11 the total offense level would have been 42, Criminal
12 History Category V, for an advisory guideline range
13 of imprisonment of 360 months to life. Under the
14 parties' agreement, the total offense level would
15 be 39, Criminal History Category V, which would still
16 result in an advisory guideline range of imprisonment
17 of 360 months to life.
18       In preparation for today's hearing,
19 I have reviewed in detail, of course, the Presentence
20 Investigation Report. I've also reviewed filings by
21 the parties. At document number 152, the defendant
22 filed a sentencing memorandum and motion for downward
23 variance. At document number 253, the Government
24 filed a response. At document 154, defendant filed
25 letters of support. And then at document 255, as I

12

1  have already noted, the parties filed a joint notice
2  regarding sentencing.
3        Ms. Lundquist, have I identified all the
4  relevant pleadings, documents, and exhibits pertinent
5  to today's hearing?
6        MS. LUNDQUIST: You have, Your Honor.
7        THE COURT: Mr. Walker, do you agree?
8        MR. WALKER: Yes, Your Honor.
9        THE COURT: I do want to take something
10 up with the parties on a sealed record. I will note
11 that this part of the hearing will be under seal.
12 There are no civilians in the courtroom, and so we're
13 going to conduct this part of the hearing just in
14 court here without going to sidebar, but it will be
15 under seal and not recorded.
16                * * * * *
17       (A sealed record was made with the Court.)
18                * * * * *
19       THE COURT: All right. There is a motion
20 for a downward variance in this case. There's no
21 contested issues for the Court to decide. It is the
22 defendant's motion for a downward variance, but it is
23 my practice to hear first from the Government on a
24 motion for downward variance because that then gives
25 defense counsel an opportunity to make his

13

1  own argument but also to respond to the Government's
2  argument.
3       So I'll hear first from Ms. Lundquist about
4  her views on the downward variance motion and the
5  sentence she believes to be appropriate, then I'll
6  hear from Mr. Walker, then I'll hear from Mr. Bridges
7  if he wishes to say anything to me, and then I will
8  impose sentence.
9       So, Ms. Lundquist, I'm happy to hear from
10 you first.
11      MS. LUNDQUIST:  Thank you, Your Honor.
12      The United States asks the Court to deny
13 defendant's motion for a downward variance and impose
14 a sentence within the guideline range.
15      Looking at the nature and circumstances of
16 defendant's offense, the facts here are very
17 aggravating.  He's a pound-level meth dealer.  He was
18 buying and redistributing pounds of methamphetamine
19 on a weekly basis.  He recruited and used others in
20 that redistribution of methamphetamine.
21      He also obtained and used dangerous weapons
22 in the course of his drug dealing.  He had someone
23 buy three rifles for him.  Law enforcement also
24 seized a number of other dangerous weapons, knives,
25 Tasers, stun guns, multiple ASP batons during the

14

1  investigation of the defendant.  And these weapons
2  were not just for show.  He had obtained them or had
3  others do so so that they could be used.
4       Looking at paragraph 8 of the PSR, he was
5  planning to threaten or frighten someone.  He wanted
6  to show her that he was someone not to be messed
7  with.  And it was luck that on that evening law
8  enforcement was called and those weapons were
9  recovered before they could be used in that plan.
10      However, defendant successfully carried
11 out another plan, a violent confrontation.  He and
12 others broke into someone's house, he hit someone
13 with one of those batons, causing an injury.  And
14 during this confrontation, defendant asked for a gun.
15 And the victim was -- again, due to luck, the victim
16 was able to intercept it before the defendant got his
17 hands on it or could use it.
18      So based on these aggravating facts, the
19 high quantity of drugs, his recruitment and use of
20 others, the violence that he sought to perpetrate,
21 and the significant number of dangerous weapons that
22 were involved in his offense that he purposefully
23 incorporated into his drug-dealing activities, these
24 facts do not support defendant's motion and they, in
25 fact, weigh in favor of a sentence above the

15

1  of the guideline range.
2       Looking at his history and characteristics,
3  he is 31 years old, I believe.  He is an adult, and
4  he has been for a while.  He is also in good physical
5  health.  Yet looking at the PSR, he has very little
6  in the way of past legitimate and verified employment
7  or in the way of legitimate earnings.
8       Turning to his criminal history, he has a
9  substantial criminal history.  He missed being a
10 Category VI by one point.  But he has four unscored
11 adult convictions, I believe, and twelve one-point
12 offenses, which means that eight of those one-point
13 offenses did not score any points for purposes of his
14 criminal history category.
15      So with twelve unscored adult offenses and
16 two unscored juvenile offenses, his criminal history
17 appears to be a bit understated.  The Government is
18 not making a motion under 4A1.3, but only notes that
19 for the purposes of the 3553(a) factors.
20      His criminal history contains violence,
21 juvenile assaults, simple assault where he choked and
22 punched a pregnant woman, another assault causing
23 injury.  There's a conspiracy to commit a robbery
24 where he used a juvenile to commit that.
25      And he also has convictions for conduct

16

1  that is similar in nature to what brings him before
2  this Court.  Drugs and weapons.  So it appears that
3  he didn't learn anything from his previous
4  interactions with the justice system and, in fact,
5  his criminal conduct grew much greater in scope.
6       His performance on supervision has been
7  very poor.  Probation violations, contempt of court,
8  revocation of probation and work release.
9       And a final and important note on his
10 criminal history is that it appears he was only
11 paroled in September of 2019, and the offense conduct
12 in the PSR begins in late November of 2019.  So
13 by late November of 2019, he's engaged in this
14 pound-level meth conspiracy only just over two months
15 after he gets out of prison.
16      So based on all of those facts, he appears
17 to be a danger to the community and he is at a high
18 risk to recidivate.  And given all of that -- Also,
19 that implicates the factor of specific deterrence.
20 This defendant has not been deterred at all it
21 appears from previous interactions with the justice
22 system.
23      So for all of those reasons, the United
24 States asks the Court to deny defendant's motion for
25 a downward variance and impose a sentence above the

17

1 bottom of the guideline range, specifically in the
2 area of the middle to high end of the guideline
3 range.
4     Thank you, Your Honor.
5     THE COURT: Thank you, Ms. Lundquist.
6     Mr. Walker?
7     MR. WALKER: Your Honor, first and
8 foremost, you know, under 3553(a), there is
9 consideration obviously for some seriousness of the
10 offense. There is consideration for just punishment
11 and deterrence.
12     And, you know, I think, Your Honor, in the
13 Offense Conduct section of the PSR and the Criminal
14 History section of the PSR, we can stipulate that
15 I think the Court is probably exactly where we think
16 the Court needs to be on those fronts. This is
17 serious, no doubt. And, you know, the offense
18 conduct -- and the description there, as well as
19 criminal history, kind of speak for themselves.
20     But this is very unique, Your Honor.
21 I have to say this is a different type of sentencing
22 consideration. Under 3553(a), Your Honor, you know,
23 I do not -- Mr. Bridges knows exactly where I'm going
24 with this. There is no excuse for his conduct. He
25 is here because he accepted responsibility and

18

1 continues to do it, and I'll get to that in just a
2 second.
3     But we're here in 2022, Your Honor, and we
4 know the value, okay, whether -- It's not an excuse
5 and I'm not giving you one, but we know the value of
6 a father figure, a mentor, someone who tells you the
7 rights and wrongs of life. Okay.
8     And usually when I even contemplate making
9 this argument, I'm making it in conjunction with a
10 lot of other ones. But this is heavy -- literally as
11 heavy as I think this Court should ever weigh.
12     His dad, his biological father, is
13 nowhere. He has never even met him. Okay? He's
14 gone. There's no biological dad in this family.
15 Okay? Instead, he goes with his first stepfather.
16 And by the age 5 or 6, he has been abused so bad by
17 his mother and his stepfather that he is removed from
18 the home.
19     He goes to foster care for who knows how
20 long. Not long enough. Okay? Because then he's
21 adopted, and he's completely abused again. Now, this
22 isn't physical abuse, Your Honor. This is physical
23 and sexual abuse. Okay? To the point where he is
24 then removed again.
25 He goes to literally multiple foster homes.

19

1 and on for the duration of his life. Eventually,
2 when he's an adult, he gets adopted for the benefit
3 of a 71-year-old to get benefits.
4     I mean, this is every single person that's
5 ever had the obligation, the responsibility, and the
6 duty to bring him up, to love him unconditionally, to
7 tell him, you know, your rights and wrongs, to come
8 to them for help. He's had nothing, literally
9 nothing. Okay?
10     Eight years old, he was prescribed
11 Adderall, and his brother taught him how to crush it
12 and snort it. At eight years old. That is -- That
13 is finishing up second grade and going into third
14 grade, Your Honor. Okay?
15     Secondly, ten years old -- you're not even
16 out of elementary school -- and he's already
17 drinking, and he's already tried cocaine. By the
18 time he's a freshman, he is addicted daily to
19 methamphetamine.
20     Methamphetamine is something that
21 we're dealing with today. And this was going on
22 in his everyday chaotic life. He has literally been
23 in every single situation that could put you on
24 a wrong track and put you in a position and
25 environment which gives you no chance, that gives

20

1 you an entire opportunity for bad decision-making.
2     And I can't tell you a bigger difference
3 than the two of us sitting -- I've known him now for
4 two years. And his opportunities in life are nowhere
5 near I would say probably everybody in this room,
6 Your Honor, and I think that that should be heavily
7 weighed.
8     If it is not weighed purely by
9 decision-making, Your Honor, and right and wrong,
10 let's talk about the State's own medical diagnosis.
11 He has never had a private psychiatric doctor. He
12 couldn't afford it. They weren't available to him.
13     But the State says he suffers from anxiety,
14 attachment disorder, conduct disorder, ADHD,
15 oppositional defiant disorder. And he has all of
16 them. And he has them all because he was brought
17 into the world -- born into a situation that was not
18 of his making. Okay?
19     Now, that isn't to minimize the conduct.
20 That's not to mitigate it, Your Honor. That's to
21 put a light on why he right now is here today. Okay?
22     Interference with maturation. He has
23 issues with -- learning issues, family dysfunction,
24 physical and sexual abuse, denial of care, legal
25 problems, multiple foster homes. There's not a

21

1  chance -- This is not a chance -- This is everything
2  that we talk about and putting every single bit of
3  the deck against him.
4       And regardless -- Okay.  My personal
5  experience, Your Honor -- Take it with a grain of
6  salt.  It has been two years, and I have obviously
7  known him since he has been incarcerated.  You know,
8  he's got work history.  I'm surprised he has work
9  history, but he has work history.  It may not be
10 sufficient for the Government, but it's there.  Okay?
11      He is articulate.  He's smart.  He's
12 totally genuine and authentic.  I mean, I've never
13 really had a difficult conversation with him.  And
14 this is inherently distressing, and he's made some of
15 the most difficult decisions that he's ever had to
16 make, Your Honor, and has done it as successfully as
17 he can, contingent -- so far.  Okay?
18      The Government has argued against a
19 downward variance, Your Honor.  And they've argued
20 against it because of offense conduct and they've
21 done it because of his history as a criminal
22 history -- and they even said, you know, maybe
23 the criminal history category is underrepresented.
24 Okay?
25      I cannot tell you right now how adamantly

22

1  against that I am as far as variances.  Every single
2  bit of his offense conduct has been ironed out by
3  AUSA Pat Reinert and I in the resolution of this
4  case, and the specific offense characteristics have
5  been ironed out by way of the plea agreement and the
6  applicable guideline range, exhaustively so, by AUSA
7  Pat Reinert and I.
8       And it went from an applicable advisory
9  guideline range of 360 months to life imprisonment
10 to 360 months' imprisonment.  You don't get higher
11 with just life -- okay -- which means that all of the
12 offense conduct in this case has contributed to a
13 guideline range as consequential as that.  Period.
14 It's there in its entirety.
15      The criminal history category -- He's a
16 Criminal History Category V.  If they didn't count
17 it, it shouldn't have counted.  And if we have an
18 issue with that, we can bring it up with the
19 United States Congress and bring it up with the
20 United States Sentencing Commission.
21      But as far as the offense conduct and as
22 far as criminal history is concerned, that has all
23 been dealt with by virtue of the United States
24 sentencing guideline scheme and the PSR.  And we are
25 here on a fully resolved PSR and know exactly how

23

1  consequential this case is.
2       And every single bit of the Government's
3  position has already been accounted for by the
4  applicable advisory guideline range.  What isn't,
5  Your Honor -- What isn't is just and equitable
6  punishment, characteristics of the defendant, and
7  needed educational, vocational, medical care and/or
8  correctional treatment.
9       This is the very purpose, Your Honor,
10 of 3553(a) where the United States sentencing
11 guidelines and the application of that
12 mathematical -- that calculable scheme -- okay --
13 which wants uniformity of punishment across the
14 federal system doesn't take into account Matthew
15 Bridges and every single thing that has gone against
16 him his entire life.
17      He needs a punishment.  He is here because
18 he owns it.  He pled.  He has stipulated to the
19 offense conduct.  He has done literally everything
20 that he can to right a wrong.  These are the best
21 decisions, frankly, he's probably ever made in his
22 life.  And look what situation it comes in.
23      And yet the Government wants to say, all
24 right, we're going to do an applicable advisory
25 guideline.  They want above the low end.  Okay?  And

24

1  every single bit of their argument has already been
2  calculated and has already been -- just as the
3  United States Sentencing Commission and Congress has
4  envisioned this law to apply.  But they also said
5  3553(a) exists for these factors, and it's these
6  factors that have been totally ignored so far, and
7  they are up for this Court's consideration in support
8  of a downward variance.
9       And no doubt do I think that it is more
10 called upon under -- I very rarely even use
11 educational, vocational, medical care correction.
12 But there is not a case that's more warranted, Your
13 Honor.  It's right here.
14      And with that said, obviously, it is my
15 position from the low end of the applicable advisory
16 guideline range as the Court had shared earlier,
17 I would request a significant downward variance, and
18 I would ask the Court to consider that, and I think
19 it warrants a significant one.
20      But what I would do, Your Honor, in
21 conjunction to that is that the downward variance is
22 for a term of imprisonment.  A term of imprisonment
23 is not going to be entirely correctional for this
24 man.  It's not.  Okay?  Is it deserving?  Yes.  Is it

25

But, Your Honor, you have the statutory authority to render a supervised release term for as long literally as this Court wants. And we can structure the conditions, Your Honor, in a way that addresses the threats of recidivism, these issues that he has, that he's going to need to get control of if we're going to have any chance.

And so my position, Your Honor, is that not only do I think a significant downward variance is warranted for a just and equitable sentence, certainly sufficient but not greater than necessary, but I think you tack it on with a supervised release term, Your Honor, that can really help this man have a life that is absent of this insanity of which exists every single waking day that he has basically been alive.

Your Honor, at the appropriate time, Mr. Bridges would like to address the Court as well.

THE COURT: Of course. Thank you, Mr. Walker.

Give me a moment here.

Mr. Bridges, this is the time in the hearing when you have an opportunity to address me directly and tell me anything you would like me to take into account in determining your sentence. Of

26

course, you don't have to say anything. And if you choose not to say anything, I won't hold that against you in any way. But if there is anything you would like to say, now is the time to do so.

You can remain seated if you like or you can stand up, whatever you want to do.

THE DEFENDANT: Your Honor, I just want to say I take responsibility for everything I did. I know I destroyed my community. I know like I destroyed families and stuff like that. And I'm not like sugar-coating that or not taking responsibility or downplaying that. I take responsibility for my wrongs, and I'm going to do everything I can to right what I did wrong, and I'm going to continue to do it.

THE COURT: All right. Thank you, Mr. Bridges.

All right. In arriving at a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing, I have considered all the factors of Title 18, United States Code, Section 3553(a), even if I do not mention each of them in my comments here today.

Turning first to the offense conduct. The defendant was involved in a drug conspiracy involving a large amount of methamphetamine. And the

27

conspiracy involved him also purchasing and using firearms and engaging in violence, as well, during and in furtherance of that criminal conduct.

The Government, quite frankly, could have easily charged and -- based on the evidence and the PSR -- convicted defendant of possession of a firearm in furtherance of a drug trafficking offense. And then it would have been, under these circumstances, with the brandishing of the firearm, a seven-year mandatory consecutive sentence to the drug charge. And so the defendant's offense conduct is very serious.

Now, Mr. Walker is absolutely right. The offense conduct here I think has been adequately taken into account under the guidelines. But the law is also very clear that the Court in assessing the ultimate sentence to be imposed under 3553(a) can take into account facts and factors that have been accounted for under the guidelines already.

The guidelines are merely advisory. They are a suggestion about what the Court should do and what the sentence should be. And it only makes sense that, even though the facts and factors have been accounted for under the guidelines, that doesn't bar the Court from considering those same facts in

28

determining the ultimate sentence the Court believes is appropriate in this case.

And so I do find that the facts here are aggravating. If you look at the offense of conviction here, the defendant has been convicted of conspiracy and then two possession of firearms by a felon. And the guidelines reflect some of the conduct but not all of the criminal conduct the defendant engaged in here in the uncontested portions of the PSR. So I find those to be aggravating factors.

On the other hand, as Mr. Walker has very strongly and eloquently articulated, the defendant's history and characteristics have a lot of mitigating factors present as well.

Defendant had an abysmal childhood. He was completely neglected and abused as a child and was left ultimately to fend for himself under adverse circumstances. And so it is not surprising in that respect that defendant ended up engaged in criminal conduct when he became an adult.

He does have a couple juvenile convictions, both of which were violent. But given his background, it's not surprising that he got into other criminal conduct.

29

His substance abuse, as Mr. Walker noted, goes back to the age of eight when he was abusing prescribed medication to him. He started abusing marijuana at the age of eight, alcohol at the age of ten, methamphetamine at eleven. Cocaine at ten -- he tried, at least, one time.

Defendant has had some treatment for his substance abuse over the years. But, clearly, it has not been sufficient. He has earned his GED, which is good. And I can tell from not only Mr. Walker's comments, but from Mr. Bridges' own allocution here, that he is a bright and articulate man who has some potential here. Even though he hasn't clearly lived up to the potential he has, there is no reason he can't in the future.

It is particularly concerning to the Court, though, the defendant's criminal history. The defendant has, by my count, eighteen adult convictions, eight of which occurred while he was on probation, three of which were violent as an adult, not counting the two violent juvenile convictions.

And as Ms. Lundquist noted, the criminal history points stop after four for one-pointers. The defendant had twelve one-pointers, so his criminal history category is understated in my view.

30

And I get Mr. Walker's position that if that's the case, then the Commission should adjust the guidelines and account for higher points or so forth on here. But the guidelines themselves allow for an upward departure for understatement of criminal history when you calculate the criminal history score, even under those scenarios.

So the guidelines actually provide for a mechanism for departing upward when you score it the way it should and yet it doesn't reflect the seriousness of the defendant's criminal history. And here I find that his criminal history category doesn't really reflect the seriousness and likelihood of recidivism here.

The defendant is 30 years old, and he just doesn't seem to be slowing down. Usually when people age, they age out of criminal activity. And the defendant's criminal activity just seems to be increasing and becoming more serious.

The criminal conduct here is very serious criminal conduct. It was violent. It involved weapons. It involved large quantities of methamphetamine. And, as Ms. Lundquist noted, started only a couple months after he was released on parole.

31

I understand Mr. Walker -- and it's a good argument Mr. Walker makes that I should consider imposing a longer period of supervised release as an effort to try to help the defendant and give him structure and so forth instead of a longer period of incarceration.

The problem with that is the defendant has not complied with terms of supervision imposed by other courts. He doesn't seem to care about the restrictions placed on him and the orders imposed by Courts on how he is to conduct himself and, despite those conditions, continues to engage in criminal conduct, continues to violate the terms and conditions of parole and probation.

And so I have no confidence if I imposed a ten- or fifteen-year term of supervised release that it would have any greater benefit than a five-year term of supervised release because defendant is either going to learn that he has to comply with it or he's not in five years. And it's not going to help him in ten or fifteen years if he hasn't learned it after five years.

I found that there are both aggravating and mitigating factors here. And I will tell you, Mr. Bridges, coming into this hearing, I was much

32

more inclined to sentence you more harshly than I'm going to do so. But Mr. Walker made a very good argument and his points are well taken, and so I am going to take that into account.

I'm not going to grant a downward variance because I find that the aggravating factors counterbalance any of the mitigating factors present here. But I find that a sentence at the bottom of the advisory guideline range would be sufficient but not greater than necessary to achieve the goals of sentencing here, and so that's the sentence I will impose.

But I want to say a couple things to you, Mr. Bridges. First of all, your past is your past now. You're a man. You're 30 years old. I understand you had a crappy childhood, and you have my sympathy for that.

But now you've got to live up to your own life and your own potential. And you're a bright guy, you've got great potential, and you could do so much more with your life, and you're just wasting it up to this point.

There's is no reason for you to be living life like this. You've got more in you than that. And I think if everybody in this room would love to

33

see you live up to your real potential, and you have every reason to be able to do that.

And the second thing is I want you to understand at this age, and given the amount of time I'm sentencing you to, when you come back out, if you turn around and go right back into this kind of conduct, it's very likely the next time you are convicted -- And you will be caught, and you will be convicted again. You will always be caught, you'll always be convicted if you engage in criminal conduct. It may take some time, but they'll catch you. Next time you are in a courtroom like this, it is very likely you will go away for the rest of your life and not ever see the light of day again with your criminal history.

If you come back out and you engage in criminal conduct like you have done to this point, you might as well kiss the rest of your life good-bye because it is very likely it will be over at that point.

So this is the time in your life to turn your life around because you're not going to probably have another chance. If you don't learn from this occasion, if you don't take advantage of the opportunity here to turn your life in a different

34

direction, you will probably not have another life. You are just going to go back to prison for the rest of your life and you're going to spend your dying days behind bars in all likelihood. And nobody wants to see you waste your life like that. There is no reason for it.

So having considered all of the factors at Title 18, United States Code, Section 3553(a), it is the judgment of this Court that you are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 288 months. This term consists of 288 months on Count 1 and 120 months on Counts 3 and 6 to be run concurrently or served concurrently or at the same time as the sentence imposed on Count 1.

I recommend you be designated to a Bureau of Prisons' facility in close proximity to your family commensurate with your security and custody classification needs.

I also recommend you participate in the Bureau of Prisons 500-hour comprehensive residential drug abuse treatment program or an alternate substance abuse treatment program.

Upon release from imprisonment, you will be placed on supervised release for a term of five

35

years. This term consists of five years on Count 1, three years on Count 3, and three years on Count 6, all to be served concurrently or at the same time.

While on supervised release, you must comply with the following mandatory conditions: You must not commit another federal, state, or local crime. You must not unlawfully use or possess a controlled substance. You must cooperate in the collection of a DNA sample as directed by your probation officer. You must also comply with the standard conditions of supervision set out in my judgment order, together with all of the special conditions at paragraphs 111 through 117 of the presentence report.

It is ordered that you must pay to the United States a special assessment of $300, which is due immediately. I find you do not have the ability to pay a fine or community restitution, and none will be imposed.

You are hereby remanded to the custody of the United States Marshal.

Ms. Lundquist, there remains outstanding Counts 2, 4, and 5.

MS. LUNDQUIST: The Government moves for dismissal of those counts, Your Honor.

36

THE COURT: The Court grants that motion, so Counts 2, 4, and 5 are dismissed.

Before I advise Mr. Bridges then of his right to appeal, is there anything else on behalf of the United States?

MS. LUNDQUIST: No, Your Honor.

THE COURT: And Officer Sturdevant?

MS. STURDEVANT: No, Your Honor.

THE COURT: Mr. Walker?

MR. WALKER: Just two quick items, Your Honor. I know that you had recommended that he be designated to the closest facility, I believe, to here. Would the Court entertain a judicial recommendation for Terre Haute, Pekin, and Marion if they can accommodate -- and those three, in that order.

THE COURT: Mr. Walker, I'm not going to make that recommendation for a couple reasons. One is the Bureau of Prisons is really the best place in my mind, based on my experience, to determine the best placement for an offender, taking into account all of his needs.

And in this case, with Mr. Bridges' mental health issues, substance abuse issues, all that kind of stuff, they have a lot of factors they need to

1  take into account to try to figure out the best place
2  for him.
3              And what I've been told by BOP officials
4  in the past is that when the Court makes a
5  recommendation, they try to abide by the
6  recommendation; and oftentimes, in their view,
7  that has ended up with them placing an offender in
8  a place that the Court has recommended that, quite
9  frankly, they don't think is in an offender's best
10 interest, given his needs and opportunities.
11             The other reason I hesitate is because,
12 although it appears the Bureau of Prisons has done
13 a remarkably good job of tamping down any COVID
14 pandemic issues, I think -- and now I'm not that
15 concerned about the pandemic and the Bureau of
16 Prisons' numbers are way down to where I don't have
17 a lot of concern -- but what we've just gone through
18 is an indication that we don't know what the future
19 holds for future pandemics.  And what I don't want to
20 do is recommend a place that the Bureau of Prisons
21 feels like they have to keep or place Mr. Bridges
22 only to find out that that ends up being a hot bed of
23 a new pandemic that breaks out.  And I'd like to have
24 the Bureau of Prisons have the full authority to move
25 him as necessary to protect him and not be bound by a

1  Court recommendation and keep him at a location
2  despite whatever the numbers might be if a new
3  pandemic breaks out.  So that's why I'm a little
4  hesitant to do that.  So that's generally been my
5  practice, and I'm going to do that here.
6              Now, they may end up putting him in one of
7  those places, but I really want to leave it up to the
8  BOP as experts to determine the best placement for
9  Mr. Bridges.
10             But you had another matter you wanted to
11 raise?
12             MR. WALKER:  Yes.  Thank you, Your Honor.
13             The last matter is that in this case
14 Mr. Bridges -- You can see the two dismissed cases at
15 the very end of the criminal history, and this is why
16 I -- I might need some clarification from U.S.
17 Probation with this request.
18             But he was -- These two incidents dated
19 2-16-2020 and 3-26-2020, I'm not sure, Your Honor,
20 if either one of those is an arrest date, but those
21 two cases are the basis of this case, and they have
22 since been dismissed.  They were dismissed a year
23 later.
24             And if you go to the beginning, Your Honor,
25 you'll see -- I'm probably on -- The PSR indicates

1  that the warrant was served -- so 2016 -- So right
2  here, defendant was arrested on a warrant for the
3  instant offense.
4              THE COURT:  That's on paragraph 2, and they
5  were dismissed on the same date.
6              MR. WALKER:  Yes.  And they were -- They
7  ended up -- Yes.  I'm sorry.  They were dismissed on
8  the same date, which was when the federal warrant was
9  issued.  But he spent a year in jail on this case
10 under state primary custody until they dismissed that
11 and, obviously, the feds picked it up.
12             And I was wondering if Your Honor would
13 allow him to get credit for that year, being based
14 literally on the same case.
15             THE COURT:  And here is the quick answer.
16 It's out of my control.  So by statute, the Bureau
17 of Prisons and Bureau of Prisons alone determines
18 credit for time served for related conduct.  So the
19 Bureau of Prisons will look at this.
20             And, again, this is just -- When I say
21 it's not binding, it's completely up to the Bureau of
22 Prisons.  But the Bureau of Prisons is going to look
23 at this, and the probation office indicated on both
24 paragraphs 66 and 67 that the basis for these
25 offenses are set forth in the Offense Conduct section

1  of this PSR.
2              So what that tells the Bureau of Prisons
3  is that if -- and they'll look at his state time,
4  they'll find out if he served any time on these
5  charges, and they'll do that calculation and should
6  credit him for it.  That's completely up to the
7  Bureau of Prisons.
8              And by statute, a district court judge
9  has no authority to determine credit that the Bureau
10 of Prisons is in charge of trying to determine on
11 this, so -- I think he'll be fine.  The Bureau
12 of Prisons will look at this.  And the way that the
13 PSR is written, it should be very clear to the BOP.
14 Defendant has a right -- If he doesn't feel like he
15 has gotten credit for time served on related criminal
16 conduct, there is a procedure -- administrative
17 procedure -- within the Bureau of Prisons where he
18 can raise that.
19             And then ultimately if he is not satisfied
20 with the outcome there, he has a right to file a
21 petition under Title 28, United States Code,
22 Section 1441 seeking redress in a district court --
23 in the district court he's incarcerated saying that
24 the Bureau of Prisons should have given him credit,
25 they did not correct it or he has -- to exhaust

41

1  his administrative remedies first.
2       So there's a procedure built in for him
3  to ultimately get court review of that decision if it
4  is not properly done.
5       MR. WALKER:  Great.  Thank you, Your Honor.
6       THE COURT:  Very good.  All right.
7       Mr. Bridges, let me talk to you, sir, about
8  your right to appeal.  If you are unhappy with the
9  sentence I have just imposed, you have the right to
10 appeal that sentence to a higher court.  That court
11 is called the Eighth Circuit Court of Appeals.
12      To appeal to that court, you would have to
13 file a written Notice of Appeal with the Clerk of
14 Court for the Northern District of Iowa here in
15 Cedar Rapids within the next 14 days.  If you fail to
16 file a written Notice of Appeal within the next
17 14 days, you give up forever your right to appeal the
18 sentence I have just imposed.
19      Now, if you'd like to appeal but you can't
20 afford the services of an attorney to do so,
21 I would appoint an attorney to represent you on
22 appeal at no expense to you.
23      Do you understand your right to appeal,
24 sir?
25      THE DEFENDANT:  Yes, Your Honor.

42

1       THE COURT:  Do you have any questions about
2  anything we've done here today, sir?
3       THE DEFENDANT:  No, Your Honor.
4       THE COURT:  Good luck to you, Mr. Bridges.
5  I hope I don't see you again in this courtroom.
6       Mr. Walker, anything further on behalf of
7  Mr. Bridges?
8       MR. WALKER:  Nothing, Your Honor.  Thank
9  you.
10      THE COURT:  Ms. Lundquist?
11      MS. LUNDQUIST:  No, Your Honor.
12      THE COURT:  All right.  Thank you.  That
13 concludes this hearing.
14      (Hearing concluded at 3:57 p.m., June 30,
15 2022.)
16
17
18
19
20
21
22
23
24
25

43

1           C E R T I F I C A T E
2       I, Ellen Tucker, Certified Shorthand
   Reporter of the State of Iowa, do hereby certify that
3  on June 30, 2022, at the U.S. District Court for
   Northern District of Iowa, 111 Seventh Avenue, SE,
4  Cedar Rapids, IA  52401, I reported in shorthand the
   testimony and proceedings in the above-entitled
5  cause; reduced the same to typewriting under my
   direction and supervision, and that the foregoing
6  transcript is a true and correct record of all
   proceedings had on the taking of said hearing at the
7  above time and place with the exception of the sealed
   record which is set out in a separate transcript.
8
        I further certify that I am not related to
9  or employed by any of the parties to this proceeding,
   and, further, that I am not a relative or employee of
10 any attorney or counsel employed by the parties
   hereto or financially interested in the action.
11
        IN WITNESS WHEREOF, I have set my hand this
12 3rd day of March, 2023.
13
14
                    _____
15                  Ellen Tucker
                    Certified Shorthand Reporter
16                  Registered Merit Reporter
                    Certified Realtime Reporter
17
18
19
20
21
22
23
24
25

## $

**$10** [1] - 3:17
**$100** [1] - 3:19
**$250,000** [1] - 3:18
**$300** [2] - 3:20, 35:16

## 1

**1** [7] - 2:17, 3:3, 3:10, 3:16, 34:12, 34:15, 35:1
**10** [2] - 3:6, 11:4
**10-year** [1] - 3:3
**101** [1] - 1:19
**111** [4] - 1:10, 1:15, 35:13, 43:3
**117** [1] - 35:13
**12** [2] - 5:2, 11:7
**120** [1] - 34:12
**13** [1] - 8:21
**14** [2] - 41:15, 41:17
**1441** [1] - 40:22
**148** [1] - 2:14
**152** [1] - 11:21
**154** [1] - 11:24
**155** [1] - 4:7
**18** [5] - 2:25, 5:2, 8:22, 26:20, 34:8
**19** [1] - 9:5

## 2

**2** [4] - 5:20, 35:23, 36:2, 39:4
**2-16-2020** [1] - 38:19
**20** [3] - 5:2, 9:10, 9:17
**20-CR-108** [2] - 1:4, 2:5
**2016** [1] - 39:1
**2019** [3] - 16:11, 16:12, 16:13
**2021** [1] - 2:15
**2022** [4] - 1:9, 18:3, 42:15, 43:3
**2023** [1] - 43:12
**21** [1] - 2:20
**22** [3] - 5:2, 9:19, 10:1
**253** [1] - 11:23
**255** [1] - 11:25
**28** [1] - 40:21
**288** [2] - 34:11, 34:12
**29** [1] - 11:1
**2:58** [1] - 1:9
**2D1.1(b)(1)** [1] - 9:9
**2D1.1(b)(2** [1] - 9:13
**2D1.1(c)(1)** [1] - 9:4

## 3

**3** [7] - 2:22, 3:5, 3:12, 3:17, 5:20, 34:13, 35:2
**3-26-2020** [1] - 38:19
**30** [4] - 30:15, 32:15, 42:14, 43:3
**30303** [1] - 1:20
**30th** [1] - 1:9
**31** [1] - 15:3
**319-899-9456** [1] - 1:25
**3325** [1] - 1:19
**3553(a** [8] - 15:19, 17:8, 17:22, 23:10, 24:5, 26:21, 27:17, 34:8
**360** [4] - 11:13, 11:17, 22:9, 22:10
**38** [2] - 8:24, 9:3
**39** [2] - 10:23, 11:15
**3:57** [1] - 42:14
**3B1.1(b)** [1] - 9:22
**3E1.1(a)** [1] - 10:9
**3E1.1(b** [1] - 10:13
**3rd** [1] - 43:12

## 4

**4** [2] - 35:23, 36:2
**4.5** [1] - 9:2
**42** [3] - 10:5, 10:21, 11:11
**45** [1] - 10:4
**481(a)(1** [1] - 2:20
**481(b)(1)(A** [1] - 2:21
**4A1.3** [1] - 15:18

## 5

**5** [4] - 5:2, 18:16, 35:23, 36:2
**50** [1] - 2:18
**500-hour** [1] - 34:21
**51** [1] - 11:2
**52401** [3] - 1:11, 1:16, 43:4
**52402** [1] - 1:24

## 6

**6** [7] - 2:22, 3:5, 3:12, 3:17, 18:16, 34:13, 35:2
**6.804** [1] - 9:1
**66** [1] - 39:24
**67** [1] - 39:24

## 7

**71-year-old** [1] - 19:3
**7th** [1] - 2:15

## 8

**8** [1] - 14:4
**846** [1] - 2:21

## 9

**9** [1] - 5:2
**922(g)(1** [1] - 3:1
**924(a)(2)** [1] - 3:1

## A

**abide** [1] - 37:5
**ability** [1] - 35:17
**able** [3] - 7:10, 14:16, 33:2
**above-entitled** [1] - 43:4
**absent** [1] - 25:14
**absolutely** [1] - 27:13
**abuse** [8] - 18:22, 18:23, 20:24, 29:1, 29:8, 34:22, 34:23, 36:24
**abused** [3] - 18:16, 18:21, 28:17
**abusing** [2] - 29:2, 29:3
**abysmal** [1] - 28:16
**acceptance** [4] - 5:12, 10:8, 10:12, 10:18
**accepted** [1] - 17:25
**accommodate** [1] - 36:15
**account** [8] - 23:14, 25:25, 27:15, 27:18, 30:3, 32:4, 36:21, 37:1
**accounted** [3] - 23:3, 27:19, 27:24
**achieve** [2] - 26:19, 32:10
**action** [1] - 43:10
**activities** [1] - 14:23
**activity** [2] - 30:17, 30:18
**actual** [1] - 2:18
**adamantly** [1] - 21:25
**added** [1] - 11:7
**Adderall** [1] - 19:11
**addicted** [1] - 19:18
**additional** [2] - 10:12, 11:6
**address** [2] - 25:18, 25:23
**addresses** [1] - 25:5
**adequately** [1] - 27:14
**ADHD** [1] - 20:14
**adjust** [1] - 30:2
**adjusted** [2] - 10:3, 10:5
**administrative** [2] - 40:16, 41:1
**adopt** [2] - 8:5, 8:8
**adopted** [2] - 18:21, 19:2
**adult** [7] - 15:3, 15:11, 15:15, 19:2, 28:21, 29:18, 29:20
**advantage** [1] - 33:24
**adverse** [1] - 28:18
**advise** [1] - 36:3
**advisory** [10] - 4:1, 8:17, 11:12, 11:16, 22:8, 23:4, 23:24, 24:15, 27:20, 32:9
**afford** [2] - 20:12, 41:20
**age** [7] - 18:16, 29:2, 29:4, 30:17, 33:4
**aggravating** [6] - 13:17, 14:18, 28:4, 28:10, 31:23, 32:6
**agree** [1] - 12:7
**agreed** [3] - 5:10, 9:14, 9:23
**agreement** [20] - 4:6, 4:13, 5:3, 5:10, 5:23, 6:17, 7:18, 7:19, 7:24, 8:3, 8:7, 8:20, 9:14, 9:18, 9:23, 10:4, 10:14, 10:22, 11:14, 22:5
**agreements** [2] - 6:7, 8:5
**alcohol** [1] - 29:4
**alive** [1] - 25:16
**allocution** [1] - 29:11
**allow** [2] - 30:4, 39:13
**alone** [1] - 39:17
**alternate** [1] - 34:22
**America** [1] - 2:4
**AMERICA** [1] - 1:3
**amount** [2] - 26:25, 33:4
**answer** [2] - 7:10, 39:15
**anxiety** [1] - 20:13
**Appeal** [2] - 41:13, 41:16
**appeal** [8] - 36:4, 41:8, 41:10, 41:12, 41:17, 41:19, 41:22, 41:23
**Appeals** [1] - 41:11
**applicable** [6] - 5:13, 22:6, 22:8, 23:4, 23:24, 24:15
**application** [1] - 23:11
**applied** [1] - 9:17
**apply** [1] - 24:4
**appoint** [1] - 41:21
**appropriate** [3] - 13:5, 25:17, 28:2
**area** [1] - 17:2
**argued** [2] - 21:18, 21:19
**argument** [6] - 13:1, 13:2, 18:9, 24:1, 31:2, 32:3
**arrest** [1] - 38:20
**arrested** [1] - 39:2
**arriving** [1] - 26:17
**articulate** [2] - 21:11, 29:12
**articulated** [1] - 28:13
**ASP** [1] - 13:25
**assault** [2] - 15:21, 15:22
**assaults** [1] - 15:21
**assessed** [4] - 8:23, 9:6, 9:11, 9:20
**assessing** [1] - 27:16
**assessment** [2] - 3:19, 35:16
**Assistant** [2] - 1:14, 2:8
**Atlanta** [1] - 1:20
**attachment** [1] - 20:14
**attorney** [4] - 5:25, 41:20, 41:21, 43:10
**Attorney** [4] - 1:14, 1:18, 2:8, 2:10
**Attorney's** [1] - 1:15
**attorney-client** [1] - 5:25
**AUSA** [3] - 6:8, 22:3, 22:6
**authentic** [1] - 21:12
**authored** [1] - 2:13
**authority** [3] - 25:2, 37:24, 40:9
**available** [1] - 20:12
**Avenue** [3] - 1:11, 1:15, 43:3
**awarded** [1] - 10:7
**aware** [1] - 6:18

## B

**background** [2] - 8:16, 28:24
**bad** [2] - 18:16, 20:1
**bar** [1] - 27:24
**bars** [1] - 34:4

**Base** [1] - 5:10
**base** [3] - 5:15, 8:24, 9:3
**based** [6] - 8:24, 14:18, 16:16, 27:5, 36:20, 39:13
**basis** [3] - 13:19, 38:21, 39:24
**batons** [2] - 13:25, 14:13
**became** [1] - 28:21
**becoming** [1] - 30:19
**bed** [1] - 37:22
**beginning** [2] - 11:1, 38:24
**begins** [2] - 8:21, 16:12
**behalf** [3] - 3:21, 36:4, 42:6
**behind** [1] - 34:4
**believes** [2] - 13:5, 28:1
**benefit** [2] - 19:2, 31:17
**benefits** [1] - 19:3
**best** [6] - 23:20, 36:19, 36:21, 37:1, 37:9, 38:8
**between** [1] - 5:6
**bigger** [1] - 20:2
**binding** [1] - 39:21
**biological** [2] - 18:12, 18:14
**bit** [5] - 15:17, 21:2, 22:2, 23:2, 24:1
**BOP** [3] - 37:3, 38:8, 40:13
**born** [1] - 20:17
**bottom** [3] - 14:25, 17:1, 32:8
**bound** [2] - 7:23, 37:25
**brandishing** [1] - 27:9
**breaks** [2] - 37:23, 38:3
**Bridges** [20] - 2:4, 6:4, 6:12, 6:18, 6:23, 13:6, 17:23, 23:15, 25:18, 25:22, 26:16, 31:25, 32:14, 36:3, 37:21, 38:9, 38:14, 41:7, 42:4, 42:7
**BRIDGES** [1] - 1:6
**Bridges'** [2] - 29:11, 36:23
**brief** [1] - 5:22
**bright** [2] - 29:12, 32:19
**bring** [3] - 19:6, 22:18, 22:19

**brings** [1] - 16:1
**broke** [1] - 14:12
**brother** [1] - 19:11
**brought** [1] - 20:16
**built** [1] - 41:2
**Bureau** [19] - 34:10, 34:16, 34:21, 36:19, 37:12, 37:15, 37:20, 37:24, 39:16, 39:17, 39:19, 39:21, 39:22, 40:2, 40:7, 40:9, 40:11, 40:17, 40:24
**buy** [1] - 13:23
**buying** [1] - 13:18
**bye** [1] - 33:18

**C**

**C.J** [1] - 1:10
**calculable** [1] - 23:12
**calculate** [1] - 30:6
**calculated** [3] - 10:2, 11:10, 24:2
**calculation** [5] - 4:1, 8:16, 8:21, 10:20, 40:5
**calculations** [1] - 8:19
**cannot** [1] - 21:25
**care** [5] - 18:19, 20:24, 23:7, 24:11, 31:9
**carried** [1] - 14:10
**carrying** [1] - 11:1
**case** [13] - 2:5, 12:20, 22:4, 22:12, 23:1, 24:12, 28:2, 30:2, 36:23, 38:13, 38:21, 39:9, 39:14
**cases** [2] - 38:14, 38:21
**catch** [1] - 33:11
**category** [5] - 15:14, 21:23, 22:15, 29:25, 30:12
**Category** [5] - 11:9, 11:12, 11:15, 15:10, 22:16
**caught** [2] - 33:8, 33:9
**causing** [2] - 14:13, 15:22
**CEDAR** [1] - 1:2
**Cedar** [5] - 1:11, 1:16, 1:24, 41:15, 43:4
**certainly** [1] - 25:11
**Certified** [4] - 1:24, 43:2, 43:15, 43:16
**certify** [2] - 43:2, 43:8
**chance** [5] - 19:25, 21:1, 25:7, 33:23
**change** [1] - 8:19
**changed** [1] - 5:14

**chaotic** [1] - 19:22
**characteristics** [4] - 15:2, 22:4, 23:6, 28:14
**charge** [2] - 27:10, 40:10
**charged** [3] - 2:17, 2:23, 27:5
**charges** [1] - 40:5
**child** [1] - 28:17
**childhood** [2] - 28:16, 32:16
**choked** [1] - 15:21
**choose** [1] - 26:2
**Circuit** [1] - 41:11
**circumstances** [3] - 13:15, 27:8, 28:19
**civilians** [1] - 12:12
**clarification** [1] - 38:16
**classification** [1] - 34:19
**clear** [2] - 27:16, 40:13
**clearly** [2] - 29:8, 29:13
**Clerk** [1] - 41:13
**client** [3] - 5:24, 5:25, 6:1
**close** [1] - 34:17
**closest** [1] - 36:12
**coating** [1] - 26:11
**cocaine** [2] - 19:17, 29:5
**Code** [5] - 2:20, 2:25, 26:20, 34:8, 40:21
**collection** [1] - 35:9
**coming** [1] - 31:25
**commencing** [1] - 1:9
**commensurate** [1] - 34:18
**comments** [2] - 26:22, 29:11
**Commission** [3] - 22:20, 24:3, 30:2
**commit** [3] - 15:23, 15:24, 35:6
**committed** [2] - 11:5, 34:10
**communicated** [1] - 6:1
**communication** [1] - 5:25
**community** [3] - 16:17, 26:9, 35:18
**completely** [4] - 18:21, 28:17, 39:21, 40:6
**complied** [1] - 31:8
**comply** [3] - 31:20, 35:5, 35:10

**comprehensive** [1] - 34:21
**concern** [1] - 37:17
**concerned** [2] - 22:22, 37:15
**concerning** [1] - 29:16
**concluded** [1] - 42:14
**concludes** [1] - 42:13
**concurrently** [3] - 34:13, 34:14, 35:3
**conditions** [6] - 25:4, 31:12, 31:14, 35:5, 35:11, 35:13
**conduct** [30] - 12:13, 15:25, 16:5, 16:11, 17:18, 17:24, 20:14, 20:19, 21:20, 22:2, 22:12, 22:21, 23:19, 26:23, 27:3, 27:11, 27:14, 28:8, 28:21, 28:25, 30:20, 30:21, 31:11, 31:13, 33:7, 33:11, 33:17, 39:18, 40:16
**Conduct** [2] - 17:13, 39:25
**conferences** [1] - 6:13
**confidence** [1] - 31:15
**confrontation** [2] - 14:11, 14:14
**Congress** [2] - 22:19, 24:3
**conjunction** [2] - 18:9, 24:21
**connection** [1] - 9:8
**consecutive** [1] - 27:10
**consequential** [2] - 22:13, 23:1
**consider** [3] - 6:20, 24:18, 31:2
**consideration** [4] - 17:9, 17:10, 17:22, 24:7
**considered** [2] - 26:19, 34:7
**considering** [1] - 27:25
**consists** [2] - 34:12, 35:1
**conspiracy** [6] - 2:18, 15:23, 16:14, 26:24, 27:1, 28:6
**contains** [1] - 15:20
**contemplate** [1] - 18:8
**contempt** [1] - 16:7
**contested** [3] - 8:11, 9:15, 12:21
**contingent** [1] - 21:17
**continue** [1] - 26:14

**continues** [3] - 18:1, 31:12, 31:13
**contributed** [1] - 22:12
**control** [2] - 25:6, 39:16
**controlled** [1] - 35:8
**conversation** [1] - 21:13
**convicted** [5] - 27:6, 28:5, 33:8, 33:9, 33:10
**conviction** [2] - 3:20, 28:5
**conviction/ presentence** [1] - 6:11
**convictions** [6] - 11:3, 15:11, 15:25, 28:22, 29:19, 29:21
**cooperate** [1] - 35:8
**correct** [3] - 4:9, 4:10, 43:6
**correction** [1] - 24:11
**correctional** [2] - 23:8, 24:23
**correctly** [1] - 40:25
**counsel** [2] - 12:25, 43:10
**count** [5] - 2:16, 3:18, 3:19, 22:16, 29:18
**Count** [9] - 2:17, 3:3, 3:10, 3:16, 34:12, 34:15, 35:1, 35:2
**counted** [1] - 22:17
**counterbalance** [1] - 32:7
**counting** [1] - 29:21
**countless** [1] - 6:5
**counts** [3] - 2:16, 3:5, 35:25
**Counts** [6] - 2:22, 3:12, 3:17, 34:13, 35:23, 36:2
**couple** [4] - 28:22, 30:24, 32:13, 36:18
**course** [6] - 5:24, 6:13, 11:19, 13:22, 25:19, 26:1
**COURT** [37] - 1:1, 2:2, 3:25, 4:4, 4:12, 4:15, 4:18, 4:22, 4:25, 5:21, 6:21, 7:2, 7:5, 7:8, 7:13, 7:16, 7:22, 8:1, 8:15, 10:17, 12:7, 12:9, 12:19, 17:5, 25:19, 26:15, 36:1, 36:7, 36:9, 36:17, 39:4, 39:15, 41:6, 42:1, 42:4,

42:10, 42:12
**court** [9] - 12:14, 16:7, 40:8, 40:22, 40:23, 41:3, 41:10, 41:12
**Court** [34] - 1:10, 2:3, 3:9, 3:13, 3:16, 3:18, 4:17, 10:17, 12:17, 12:21, 13:12, 16:2, 16:24, 17:15, 17:16, 18:11, 24:16, 24:18, 25:3, 25:18, 27:16, 27:21, 27:25, 28:1, 29:16, 34:9, 36:1, 36:13, 37:4, 37:8, 38:1, 41:11, 41:14, 43:3
**Court's** [2] - 2:14, 24:7
**courtroom** [3] - 12:12, 33:12, 42:5
**courts** [1] - 31:9
**Courts** [1] - 31:11
**COVID** [1] - 37:13
**crappy** [1] - 32:16
**credit** [6] - 39:13, 39:18, 40:6, 40:9, 40:15, 40:24
**crime** [1] - 35:7
**Criminal** [5] - 11:8, 11:11, 11:15, 17:13, 22:16
**criminal** [38] - 2:4, 10:24, 11:4, 11:6, 11:7, 15:8, 15:9, 15:14, 15:16, 15:20, 16:5, 16:10, 17:19, 21:21, 21:23, 22:15, 22:22, 27:3, 28:8, 28:20, 28:25, 29:17, 29:22, 29:24, 30:6, 30:11, 30:12, 30:17, 30:18, 30:20, 30:21, 31:12, 33:10, 33:15, 33:17, 38:15, 40:15
**CRR** [1] - 1:23
**crush** [1] - 19:11
**CSR** [1] - 1:23
**custody** [4] - 34:10, 34:18, 35:20, 39:10

### D

**dad** [2] - 18:12, 18:14
**daily** [1] - 19:18
**danger** [1] - 16:17
**dangerous** [4] - 9:8, 13:21, 13:24, 14:21
**date** [3] - 38:20, 39:5, 39:8
**dated** [1] - 38:18
**days** [3] - 34:4, 41:15, 41:17
**dealer** [1] - 13:17
**dealing** [3] - 13:22, 14:23, 19:21
**dealt** [1] - 22:23
**decide** [1] - 12:21
**decision** [4] - 8:11, 20:1, 20:9, 41:3
**decision-making** [2] - 20:1, 20:9
**decisions** [2] - 21:15, 23:21
**deck** [1] - 21:3
**Defendant** [2] - 1:7, 1:17
**DEFENDANT** [11] - 7:1, 7:4, 7:7, 7:12, 7:15, 7:21, 7:25, 8:14, 26:7, 41:25, 42:3
**defendant** [39] - 2:9, 2:15, 3:8, 8:3, 8:23, 9:1, 9:6, 9:11, 9:20, 10:3, 10:6, 10:11, 10:20, 10:24, 11:5, 11:8, 11:21, 11:24, 14:1, 14:10, 14:14, 14:16, 16:20, 23:6, 26:24, 27:6, 28:5, 28:9, 28:16, 28:20, 29:7, 29:18, 29:24, 30:15, 31:4, 31:7, 31:19, 39:2, 40:14
**defendant's** [11] - 11:3, 12:22, 13:13, 13:16, 14:24, 16:24, 27:11, 28:13, 29:17, 30:11, 30:18
**defense** [1] - 12:25
**Defense** [1] - 2:10
**defiant** [1] - 20:15
**denial** [1] - 20:24
**deny** [2] - 13:12, 16:24
**departing** [1] - 30:9
**departure** [1] - 30:5
**description** [1] - 17:18
**deserving** [1] - 24:24
**designated** [2] - 34:16, 36:12
**despite** [2] - 31:11, 38:2
**destroyed** [2] - 26:9, 26:10
**detail** [1] - 11:19
**details** [1] - 5:8
**determination** [1] - 8:18
**determine** [4] - 36:20, 38:8, 40:9, 40:10
**determined** [2] - 5:16, 8:17
**determines** [1] - 39:17
**determining** [2] - 25:25, 28:1
**deterred** [1] - 16:20
**deterrence** [2] - 16:19, 17:11
**diagnosis** [1] - 20:10
**difference** [1] - 20:2
**different** [2] - 17:21, 33:25
**difficult** [2] - 21:13, 21:15
**directed** [1] - 35:9
**direction** [2] - 34:1, 43:5
**directly** [1] - 25:24
**discuss** [1] - 7:6
**dismissal** [1] - 35:25
**dismissed** [7] - 36:2, 38:14, 38:22, 39:5, 39:7, 39:10
**disorder** [3] - 20:14, 20:15
**distressing** [1] - 21:14
**distribute** [1] - 2:18
**DISTRICT** [2] - 1:1, 1:1
**district** [3] - 40:8, 40:22, 40:23
**District** [5] - 1:10, 1:10, 41:14, 43:3, 43:3
**DIVISION** [1] - 1:2
**DNA** [1] - 35:9
**doctor** [1] - 20:11
**document** [6] - 2:14, 4:7, 11:21, 11:23, 11:24, 11:25
**documents** [1] - 12:4
**done** [7] - 21:16, 21:21, 23:19, 33:17, 37:12, 41:4, 42:2
**doubt** [2] - 17:17, 24:9
**down** [3] - 30:16, 37:13, 37:16
**downplaying** [1] - 26:12
**downward** [13] - 11:22, 12:20, 12:22, 12:24, 13:4, 13:13, 16:25, 21:19, 24:8, 24:17, 24:21, 25:9, 32:5
**drinking** [1] - 19:17
**drug** [7] - 8:24, 13:22, 14:23, 26:24, 27:7, 27:10, 34:22
**drug-dealing** [1] - 14:23
**drugs** [2] - 14:19, 16:2

**due** [2] - 14:15, 35:17
**duration** [1] - 19:1
**during** [3] - 13:25, 14:14, 27:2
**duty** [1] - 19:6
**dying** [1] - 34:3
**dysfunction** [1] - 20:23

### E

**earned** [1] - 29:9
**earnings** [1] - 15:7
**easily** [1] - 27:5
**educational** [2] - 23:7, 24:11
**effort** [1] - 31:4
**eight** [5] - 15:12, 19:12, 29:2, 29:4, 29:19
**Eight** [1] - 19:10
**eighteen** [1] - 29:18
**Eighth** [1] - 41:11
**either** [2] - 31:19, 38:20
**elementary** [1] - 19:16
**eleven** [1] - 29:5
**Ellen** [3] - 1:23, 43:2, 43:15
**eloquently** [1] - 28:13
**employed** [2] - 43:9, 43:10
**employee** [1] - 43:9
**employment** [1] - 15:6
**end** [5] - 17:2, 23:25, 24:15, 38:6, 38:15
**ended** [4] - 10:20, 28:20, 37:7, 39:7
**ends** [1] - 37:22
**enforcement** [2] - 13:23, 14:8
**engage** [3] - 31:12, 33:10, 33:16
**engaged** [3] - 16:13, 28:9, 28:20
**engaging** [1] - 27:2
**enhancement** [8] - 4:8, 9:7, 9:12, 9:16, 9:17, 9:21, 9:24, 9:25
**entertain** [1] - 36:13
**entire** [2] - 20:1, 23:16
**entirely** [1] - 24:23
**entirety** [1] - 22:14
**entitled** [1] - 43:4
**environment** [1] - 19:25
**envisioned** [1] - 24:4
**equitable** [2] - 23:5, 25:10

**essentially** [1] - 6:15
**evening** [1] - 14:7
**eventually** [1] - 19:1
**everyday** [1] - 19:22
**evidence** [2] - 9:15, 27:5
**exactly** [3] - 17:15, 17:23, 22:25
**exception** [1] - 43:7
**excuse** [2] - 17:24, 18:4
**exhaust** [1] - 40:25
**exhaustively** [1] - 22:6
**exhibits** [1] - 12:4
**exists** [2] - 24:5, 25:15
**expense** [1] - 41:22
**experience** [2] - 21:5, 36:20
**experts** [1] - 38:8

### F

**facility** [2] - 34:17, 36:12
**fact** [2] - 14:25, 16:4
**factor** [1] - 16:19
**factors** [13] - 15:19, 24:5, 24:6, 26:20, 27:18, 27:23, 28:11, 28:15, 31:24, 32:6, 32:7, 34:7, 36:25
**facts** [8] - 13:16, 14:18, 14:24, 16:16, 27:18, 27:23, 27:25, 28:3
**fail** [1] - 41:15
**fair** [1] - 3:22
**families** [1] - 26:10
**family** [3] - 18:14, 20:23, 34:18
**far** [5] - 21:17, 22:1, 22:21, 22:22, 24:6
**father** [2] - 18:6, 18:12
**favor** [1] - 14:25
**federal** [3] - 23:14, 35:6, 39:8
**feds** [1] - 39:11
**felon** [2] - 2:24, 28:7
**fend** [1] - 28:18
**fifteen** [2] - 31:16, 31:21
**fifteen-year** [1] - 31:16
**figure** [2] - 18:6, 37:1
**file** [4] - 2:14, 40:20, 41:13, 41:16
**filed** [6] - 2:14, 4:7, 11:22, 11:24, 12:1
**filings** [1] - 11:20
**final** [1] - 16:9
**financially** [1] - 43:10

**fine** [3] - 3:16, 35:18, 40:11
**finishing** [1] - 19:13
**firearm** [6] - 2:24, 5:11, 5:17, 9:7, 27:6, 27:9
**firearms** [2] - 27:2, 28:6
**first** [9] - 7:9, 12:23, 13:3, 13:10, 17:7, 18:15, 26:23, 32:14, 41:1
**five** [7] - 3:11, 5:13, 31:18, 31:20, 31:22, 34:25, 35:1
**five-year** [1] - 31:18
**following** [1] - 35:5
**follows** [1] - 3:3
**FOR** [1] - 1:1
**foregoing** [1] - 43:5
**foremost** [1] - 17:8
**forever** [1] - 41:17
**forth** [4] - 5:6, 30:4, 31:5, 39:25
**foster** [2] - 18:19, 20:25
**four** [2] - 15:10, 29:23
**frankly** [4] - 5:7, 23:21, 27:4, 37:9
**freshman** [1] - 19:18
**frighten** [1] - 14:5
**fronts** [1] - 17:16
**full** [2] - 3:22, 37:24
**fully** [2] - 6:20, 22:25
**furtherance** [2] - 27:3, 27:7
**future** [3] - 29:15, 37:18, 37:19

**G**

**GA** [1] - 1:20
**GED** [1] - 29:9
**generally** [1] - 38:4
**genuine** [1] - 21:12
**given** [5] - 16:18, 28:23, 33:4, 37:10, 40:24
**goals** [2] - 26:19, 32:10
**good-bye** [1] - 33:18
**Government** [17] - 3:25, 4:8, 5:7, 6:14, 7:17, 7:20, 8:2, 9:13, 10:15, 11:23, 12:23, 15:17, 21:10, 21:18, 23:23, 27:4, 35:24
**Government's** [3] - 10:10, 13:1, 23:2
**grade** [2] - 19:13, 19:14
**grain** [1] - 21:5
**grams** [1] - 2:18
**grant** [1] - 32:5
**grants** [2] - 10:17, 36:1
**great** [2] - 32:20, 41:5
**greater** [5] - 16:5, 25:11, 26:18, 31:17, 32:10
**grew** [1] - 16:5
**guideline** [15] - 4:2, 11:12, 11:16, 13:14, 15:1, 17:1, 17:2, 22:6, 22:9, 22:13, 22:24, 23:4, 23:25, 24:16, 32:9
**Guideline** [6] - 9:4, 9:9, 9:12, 9:21, 10:9, 10:13
**guidelines** [10] - 8:17, 23:11, 27:15, 27:19, 27:20, 27:24, 28:7, 30:3, 30:4, 30:8
**guilty** [4] - 2:16, 2:17, 2:22, 10:6
**gun** [1] - 14:14
**guns** [1] - 13:25
**guy** [1] - 32:20

**H**

**halls** [1] - 18:25
**hand** [2] - 28:12, 43:11
**hands** [1] - 14:17
**happy** [1] - 13:9
**harshly** [1] - 32:1
**Haute** [1] - 36:14
**health** [2] - 15:5, 36:24
**hear** [5] - 12:23, 13:3, 13:6, 13:9
**heard** [1] - 7:16
**Hearing** [2] - 1:9, 42:14
**hearing** [9] - 2:7, 11:18, 12:5, 12:11, 12:13, 25:23, 31:25, 42:13, 43:6
**heavily** [1] - 20:6
**heavy** [2] - 18:10, 18:11
**held** [1] - 1:9
**help** [4] - 19:8, 25:13, 31:4, 31:21
**hereby** [3] - 34:9, 35:20, 43:2
**hereto** [1] - 43:10
**hesitant** [1] - 38:4
**hesitate** [1] - 37:11
**high** [3] - 14:19, 16:17, 17:2
**higher** [3] - 22:10, 30:3, 41:10
**himself** [2] - 28:18, 31:11
**history** [29] - 10:24, 11:4, 11:7, 15:2, 15:8, 15:9, 15:14, 15:16, 15:20, 16:10, 17:19, 21:8, 21:9, 21:21, 21:22, 21:23, 22:15, 22:22, 28:14, 29:17, 29:23, 29:25, 30:6, 30:7, 30:11, 30:12, 33:15, 38:15
**History** [5] - 11:8, 11:12, 11:15, 17:14, 22:16
**hit** [1] - 14:12
**hold** [1] - 26:2
**holds** [1] - 37:19
**home** [1] - 18:18
**homes** [1] - 20:25
**Honor** [56] - 3:24, 4:3, 4:11, 4:14, 4:16, 5:5, 5:14, 5:19, 6:3, 7:7, 7:12, 7:15, 7:21, 7:25, 8:14, 10:16, 12:6, 12:8, 13:11, 17:4, 17:7, 17:12, 17:20, 17:22, 18:3, 18:22, 19:14, 20:6, 20:9, 20:20, 21:5, 21:16, 21:19, 23:5, 23:9, 24:13, 24:20, 25:1, 25:4, 25:8, 25:13, 25:17, 26:7, 35:25, 36:6, 36:8, 36:11, 38:12, 38:19, 38:24, 39:12, 41:5, 41:25, 42:3, 42:8, 42:11
**Honorable** [1] - 1:10
**hope** [1] - 42:5
**hot** [1] - 37:22
**house** [1] - 14:12

**I**

**IA** [4] - 1:11, 1:16, 1:24, 43:4
**ice** [2] - 9:1, 26:25
**identified** [1] - 12:3
**ignored** [1] - 24:6
**II** [2] - 1:18, 2:10
**immediately** [1] - 35:17
**implicates** [1] - 16:19
**important** [2] - 8:9, 16:9
**impose** [6] - 3:16, 3:18, 13:8, 13:13, 16:25, 32:12
**imposed** [8] - 27:17, 31:8, 31:10, 31:15, 34:15, 35:19, 41:9, 41:18
**imposing** [1] - 31:3
**imprisoned** [1] - 34:11
**imprisonment** [7] - 11:13, 11:16, 22:9, 22:10, 24:22, 34:24
**IN** [1] - 1:1
**incarcerated** [2] - 21:7, 40:23
**incarceration** [1] - 31:6
**incidents** [1] - 38:18
**inclined** [1] - 32:1
**incorporated** [1] - 14:23
**increasing** [1] - 30:19
**indicated** [1] - 39:23
**indicates** [1] - 38:25
**indication** [1] - 37:18
**indictment** [1] - 2:16
**inherently** [1] - 21:14
**initial** [2] - 4:16, 6:15
**injury** [2] - 14:13, 15:23
**insanity** [1] - 25:14
**instant** [2] - 11:5, 39:3
**instead** [3] - 9:24, 18:15, 31:5
**intend** [1] - 8:7
**interactions** [2] - 16:4, 16:21
**intercept** [1] - 14:16
**interest** [1] - 37:10
**interested** [1] - 43:10
**interference** [1] - 20:22
**investigation** [1] - 14:1
**Investigation** [2] - 2:13, 11:20
**involved** [5] - 14:22, 26:24, 27:1, 30:21, 30:22
**involving** [1] - 26:24
**IOWA** [1] - 1:1
**Iowa** [4] - 1:10, 41:14, 43:2, 43:3
**ironed** [4] - 6:10, 6:12, 22:2, 22:5
**ironing** [1] - 5:8
**issue** [2] - 9:15, 22:18
**issued** [1] - 39:9
**issues** [9] - 6:10, 8:12, 12:21, 20:23, 25:5, 36:24, 37:14
**items** [1] - 36:10

**J**

**jail** [1] - 39:9
**job** [1] - 37:13
**joint** [3] - 4:5, 4:20, 12:1
**judge** [1] - 40:8
**judgment** [2] - 34:9, 35:12
**judicial** [1] - 36:13
**June** [3] - 1:9, 42:14, 43:3
**justice** [3] - 11:6, 16:4, 16:21
**juvenile** [6] - 15:16, 15:21, 15:24, 18:25, 28:22, 29:21

**K**

**keep** [2] - 37:21, 38:1
**kilograms** [2] - 9:1, 9:2
**kind** [7] - 4:6, 6:9, 6:10, 7:24, 17:19, 33:6, 36:24
**kiss** [1] - 33:18
**knives** [1] - 13:24
**known** [3] - 6:4, 20:3, 21:7
**knows** [2] - 17:23, 18:19
**Kyndra** [1] - 2:8
**KYNDRA** [1] - 1:14

**L**

**large** [2] - 26:25, 30:22
**last** [1] - 38:13
**late** [2] - 16:12, 16:13
**law** [4] - 13:23, 14:7, 24:4, 27:15
**Law** [1] - 1:18
**learn** [3] - 16:3, 31:19, 33:23
**learned** [1] - 31:22
**learning** [1] - 20:23
**least** [2] - 3:11, 29:6
**leave** [1] - 38:7
**left** [1] - 28:18
**legal** [1] - 20:24
**legitimate** [2] - 15:6, 15:7
**letters** [1] - 11:25

SENTENCING - US v BRIDGES (6-30-2022)

48

**level** [20] - 5:11, 5:16, 5:20, 8:24, 9:3, 9:6, 9:11, 9:20, 9:25, 10:3, 10:5, 10:8, 10:12, 10:15, 10:21, 10:23, 11:11, 11:14, 13:17, 16:14
**levels** [3] - 9:24, 9:25, 10:18
**life** [24] - 3:4, 3:12, 11:13, 11:17, 18:7, 19:1, 19:22, 20:4, 22:9, 22:11, 23:16, 23:22, 25:14, 32:19, 32:21, 32:24, 33:14, 33:18, 33:21, 33:22, 33:25, 34:1, 34:3, 34:5
**light** [3] - 8:20, 20:21, 33:14
**likelihood** [2] - 30:13, 34:4
**likely** [3] - 33:7, 33:13, 33:19
**line** [2] - 6:16
**literally** [7] - 18:10, 18:25, 19:8, 19:22, 23:19, 25:3, 39:14
**live** [2] - 32:18, 33:1
**lived** [1] - 29:13
**lives** [1] - 18:25
**living** [1] - 32:23
**LLC** [1] - 1:19
**local** [1] - 35:6
**location** [1] - 38:1
**look** [6] - 23:22, 28:4, 39:19, 39:22, 40:3, 40:12
**looking** [4] - 13:15, 14:4, 15:2, 15:5
**love** [2] - 19:6, 32:25
**low** [2] - 23:25, 24:15
**Lowther** [1] - 1:19
**luck** [3] - 14:7, 14:15, 42:4
**LUNDQUIST** [11] - 1:14, 3:24, 4:3, 4:10, 4:14, 10:14, 12:6, 13:11, 35:24, 36:6, 42:11
**Lundquist** [11] - 2:8, 3:21, 10:10, 12:3, 13:3, 13:9, 17:5, 29:22, 30:23, 35:22, 42:10

**M**

**maintain** [1] - 8:10
**man** [4] - 24:24, 25:13, 29:12, 32:15
**mandatory** [4] - 3:4, 3:19, 27:10, 35:5
**March** [1] - 43:12
**Marietta** [1] - 1:19
**marijuana** [1] - 29:4
**Marion** [1] - 36:14
**Marshal** [1] - 35:21
**mathematical** [1] - 23:12
**matter** [5] - 1:9, 2:3, 2:6, 38:10, 38:13
**matters** [1] - 6:2
**Matthew** [2] - 2:4, 23:14
**MATTHEW** [1] - 1:6
**maturation** [1] - 20:22
**mean** [2] - 19:4, 21:12
**means** [2] - 15:12, 22:11
**meant** [1] - 4:23
**mechanism** [1] - 30:9
**medical** [3] - 20:10, 23:7, 24:11
**medication** [1] - 29:3
**memorandum** [1] - 11:22
**mental** [1] - 36:23
**mention** [1] - 26:21
**mentor** [1] - 18:6
**merely** [1] - 27:20
**Merit** [1] - 43:16
**messed** [1] - 14:6
**met** [1] - 18:13
**meth** [2] - 13:17, 16:14
**methamphetamine** [9] - 2:19, 9:2, 13:18, 13:20, 19:19, 19:20, 26:25, 29:5, 30:23
**middle** [1] - 17:2
**might** [3] - 33:18, 38:2, 38:16
**million** [1] - 3:17
**mind** [1] - 36:20
**minimize** [1] - 20:19
**minimum** [1] - 3:4
**missed** [1] - 15:9
**mitigate** [1] - 20:20
**mitigating** [3] - 28:14, 31:24, 32:7
**moment** [1] - 25:21
**months** [8] - 11:13, 11:17, 16:14, 22:9, 30:24, 34:11, 34:12
**months'** [1] - 22:10
**most** [1] - 21:15
**mother** [1] - 18:17
**motion** [10] - 11:22, 12:19, 12:22, 12:24, 13:4, 13:13, 14:24, 15:18, 16:24, 36:1
**move** [1] - 37:24
**moves** [2] - 10:15, 35:24
**MR** [12] - 4:16, 4:19, 4:24, 5:5, 6:3, 12:8, 17:7, 36:10, 38:12, 39:6, 41:5, 42:8
**MS** [11] - 3:24, 4:3, 4:10, 4:14, 10:14, 12:6, 13:11, 35:24, 36:6, 36:8, 42:11
**multiple** [2] - 13:25, 20:25
**Murdoch** [3] - 2:10, 4:15, 4:23
**MURDOCH** [1] - 1:18
**must** [7] - 3:18, 35:4, 35:6, 35:7, 35:8, 35:10, 35:15

**N**

**nature** [2] - 13:15, 16:1
**near** [1] - 20:5
**necessary** [4] - 25:11, 26:18, 32:10, 37:25
**need** [3] - 25:6, 36:25, 38:16
**needed** [1] - 23:7
**needs** [5] - 17:16, 23:17, 34:19, 36:22, 37:10
**neglected** [1] - 28:17
**negotiation** [1] - 5:6
**never** [3] - 18:13, 20:11, 21:12
**new** [2] - 37:23, 38:2
**next** [4] - 33:7, 33:12, 41:15, 41:16
**NO** [1] - 1:4
**nobody** [1] - 34:4
**none** [1] - 35:18
**NORTHERN** [1] - 1:1
**Northern** [3] - 1:10, 41:14, 43:3
**note** [4] - 4:4, 8:19, 12:10, 16:9
**noted** [4] - 12:1, 29:1, 29:22, 30:23
**notes** [1] - 15:18
**nothing** [3] - 19:8, 19:9, 42:8
**Notice** [2] - 41:13, 41:16
**notice** [2] - 4:5, 12:1
**November** [2] - 16:12, 16:13
**nowhere** [2] - 18:13, 20:4
**number** [5] - 2:5, 11:21, 11:23, 13:24, 14:21
**numbers** [2] - 37:16, 38:2
**NW** [1] - 1:19

**O**

**objection** [1] - 4:1
**objections** [9] - 4:17, 4:20, 5:1, 5:4, 5:9, 6:16, 6:18, 6:19, 8:10
**obligated** [1] - 8:6
**obligation** [1] - 19:5
**obtained** [2] - 13:21, 14:2
**obviously** [4] - 17:9, 21:6, 24:14, 39:11
**occasion** [1] - 33:24
**occasions** [1] - 2:23
**occurred** [1] - 29:19
**OF** [2] - 1:1, 1:3
**offender** [2] - 36:21, 37:7
**offender's** [1] - 37:9
**offense** [33] - 5:11, 5:12, 5:15, 5:19, 8:24, 9:3, 9:8, 9:21, 10:3, 10:5, 10:7, 10:21, 10:23, 11:5, 11:11, 11:14, 13:16, 14:22, 16:11, 17:10, 17:17, 21:20, 22:2, 22:4, 22:12, 22:21, 23:19, 26:23, 27:7, 27:11, 27:14, 28:4, 39:3
**Offense** [2] - 17:13, 39:25
**offenses** [6] - 3:2, 15:12, 15:13, 15:15, 15:16, 39:25
**office** [13] - 5:17, 8:18, 8:23, 8:25, 9:6, 9:10, 9:19, 10:2, 10:7, 10:19, 10:25, 11:10, 39:23
**Office** [2] - 1:15, 1:21
**Officer** [1] - 36:7
**officer** [2] - 2:13, 35:10
**officials** [1] - 37:3
**oftentimes** [1] - 37:6
**old** [6] - 15:3, 19:10, 19:12, 19:15, 30:15, 16:13
**nowhere** [2] - 18:13, 20:4
**number** [5] - 2:5, 11:21, 11:23, 13:24, 14:21
**numbers** [2] - 37:16, 38:2
**NW** [1] - 1:19

32:15
**one** [15] - 5:20, 8:4, 10:12, 14:13, 15:10, 15:11, 15:12, 18:5, 24:19, 29:6, 29:23, 29:24, 36:18, 38:6, 38:20
**one-level** [1] - 10:12
**one-point** [2] - 15:11, 15:12
**one-pointers** [2] - 29:23, 29:24
**ones** [2] - 5:14, 18:10
**opportunities** [2] - 20:4, 37:10
**opportunity** [7] - 3:22, 6:23, 7:2, 12:25, 20:1, 25:23, 33:25
**oppositional** [1] - 20:15
**option** [1] - 3:14
**order** [2] - 35:12, 36:16
**ordered** [1] - 35:15
**orders** [1] - 31:10
**originally** [2] - 5:1, 7:10
**outcome** [1] - 40:20
**outstanding** [1] - 35:22
**own** [7] - 6:24, 7:3, 13:1, 20:10, 29:11, 32:19
**owns** [1] - 23:18

**P**

**p.m** [2] - 1:9, 42:14
**page** [1] - 8:21
**pandemic** [4] - 37:14, 37:15, 37:23, 38:3
**pandemics** [1] - 37:19
**paragraph** [10] - 8:22, 9:5, 9:10, 9:17, 9:19, 10:1, 11:1, 11:2, 14:4, 39:4
**paragraphs** [3] - 5:2, 35:13, 39:24
**parole** [4] - 3:5, 3:7, 30:25, 31:14
**paroled** [1] - 16:11
**part** [5] - 5:3, 6:12, 9:13, 12:11, 12:13
**participate** [1] - 34:20
**participating** [1] - 2:11
**particularly** [1] - 29:16
**parties** [6] - 4:4, 11:21, 12:1, 12:10, 43:9, 43:10

Case 1:20-cr-00108-CJW-MAR   Document 160   Filed 03/06/23   Page 16 of 19
ELLEN TUCKER, CSR, RMR, CRR - 319-899-9456

**parties'** [7] - 8:20, 9:18, 9:23, 10:4, 10:14, 10:22, 11:14
**past** [4] - 15:6, 32:14, 37:4
**Pat** [3] - 6:8, 22:3, 22:7
**pay** [2] - 35:15, 35:18
**Pekin** [1] - 36:14
**people** [1] - 30:16
**per** [2] - 3:18, 10:14
**performance** [1] - 16:6
**period** [3] - 22:13, 31:3, 31:5
**perpetrate** [1] - 14:20
**person** [1] - 19:4
**personal** [1] - 21:4
**personally** [1] - 2:9
**pertinent** [1] - 12:4
**petition** [1] - 40:21
**phase** [2] - 6:6, 6:11
**phone** [1] - 1:21
**physical** [4] - 15:4, 18:22, 20:24
**picked** [1] - 39:11
**place** [8] - 3:9, 3:13, 36:19, 37:1, 37:8, 37:20, 37:21, 43:7
**placed** [2] - 31:10, 34:25
**placement** [2] - 36:21, 38:8
**places** [1] - 38:7
**placing** [2] - 11:8, 37:7
**Plaintiff** [1] - 1:4
**plan** [2] - 14:9, 14:11
**planning** [1] - 14:5
**plea** [3] - 5:10, 6:7, 22:5
**pleadings** [1] - 12:4
**pled** [5] - 2:15, 2:17, 2:22, 10:6, 23:18
**point** [9] - 6:5, 6:20, 15:10, 15:11, 15:12, 18:23, 32:22, 33:17, 33:20
**pointers** [2] - 29:23, 29:24
**points** [7] - 11:4, 11:7, 11:8, 15:13, 29:23, 30:3, 32:3
**poor** [1] - 16:7
**portions** [1] - 28:9
**position** [6] - 10:11, 19:24, 23:3, 24:15, 25:8, 30:1
**possess** [1] - 35:7
**possession** [6] - 2:24,
5:11, 5:17, 9:7, 27:6, 28:6
**possibility** [2] - 3:5, 3:7
**post** [1] - 6:11
**post-conviction/ presentence** [1] - 6:11
**potential** [5] - 29:13, 29:14, 32:19, 32:20, 33:1
**pound** [2] - 13:17, 16:14
**pound-level** [2] - 13:17, 16:14
**pounds** [1] - 13:18
**practice** [3] - 8:2, 12:23, 38:5
**pregnant** [1] - 15:22
**preparation** [1] - 11:18
**prescribed** [2] - 19:10, 29:3
**Present** [1] - 1:21
**present** [4] - 2:9, 9:14, 28:15, 32:7
**presentence** [6] - 3:23, 6:24, 7:11, 7:14, 8:22, 35:14
**Presentence** [2] - 2:13, 11:19
**preserved** [1] - 5:10
**pretrial** [1] - 6:6
**previous** [2] - 16:3, 16:21
**primary** [1] - 39:10
**prison** [5] - 3:4, 3:6, 3:9, 16:15, 34:2
**Prisons** [17] - 34:10, 34:21, 36:19, 37:12, 37:20, 37:24, 39:17, 39:19, 39:22, 40:2, 40:7, 40:10, 40:12, 40:17, 40:24
**Prisons'** [2] - 34:17, 37:16
**private** [1] - 20:11
**Probation** [3] - 1:21, 38:17, 38:25
**probation** [20] - 2:12, 3:14, 5:17, 8:17, 8:23, 8:25, 9:5, 9:10, 9:19, 10:2, 10:7, 10:19, 10:25, 11:10, 16:7, 16:8, 29:20, 31:14, 35:10, 39:23
**problem** [1] - 31:7
**problems** [1] - 20:25
**procedure** [3] - 40:16, 40:17, 41:2

**proceeding** [1] - 43:9
**proceedings** [2] - 43:4, 43:6
**program** [2] - 34:22, 34:23
**properly** [1] - 41:4
**proposed** [1] - 6:6
**protect** [1] - 37:25
**provide** [1] - 30:8
**provisions** [1] - 5:13
**proximity** [1] - 34:17
**PSR** [15] - 4:17, 6:15, 6:20, 14:4, 15:5, 16:12, 17:13, 17:14, 22:24, 22:25, 27:6, 28:10, 38:25, 40:1, 40:13
**psychiatric** [1] - 20:11
**punched** [1] - 15:22
**punishable** [3] - 3:2, 3:3, 3:6
**punishing** [1] - 24:25
**punishment** [4] - 17:10, 23:6, 23:13, 23:17
**purchasing** [1] - 27:1
**pure** [1] - 2:19
**purely** [1] - 20:8
**purpose** [1] - 23:9
**purposefully** [1] - 14:22
**purposes** [2] - 15:13, 15:19
**pursuant** [1] - 9:22
**put** [3] - 19:23, 19:24, 20:21
**putting** [2] - 21:2, 38:6

**Q**

**quantities** [1] - 30:22
**quantity** [2] - 8:24, 14:19
**questions** [4] - 7:8, 7:10, 7:13, 42:1
**quick** [2] - 36:10, 39:15
**quite** [2] - 27:4, 37:8

**R**

**raise** [2] - 38:11, 40:18
**range** [13] - 4:2, 11:12, 11:16, 13:14, 15:1, 17:1, 17:3, 22:6, 22:9, 22:13, 23:4, 24:16, 32:9
**RAPIDS** [1] - 1:2
**Rapids** [5] - 1:11, 1:16, 1:24, 41:15,

43:4
**rarely** [1] - 24:10
**reach** [2] - 7:23, 8:3
**reached** [3] - 4:5, 7:18, 7:19
**real** [1] - 33:1
**really** [5] - 21:13, 25:13, 30:13, 36:19, 38:7
**Realtime** [1] - 43:16
**reason** [5] - 29:14, 32:23, 33:2, 34:6, 37:11
**reasons** [2] - 16:23, 36:18
**receive** [1] - 10:11
**recidivate** [1] - 16:18
**recidivism** [2] - 25:5, 30:14
**recommend** [3] - 34:16, 34:20, 37:20
**recommendation** [5] - 36:14, 36:18, 37:5, 37:6, 38:1
**recommended** [2] - 36:11, 37:8
**record** [6] - 4:12, 5:22, 12:10, 12:17, 43:6, 43:7
**recorded** [1] - 12:15
**recovered** [1] - 14:9
**recruited** [1] - 13:19
**recruitment** [1] - 14:19
**redistributing** [1] - 13:18
**redistribution** [1] - 13:20
**redress** [1] - 40:22
**reduced** [2] - 5:19, 43:5
**reduction** [2] - 10:8, 10:12
**reflect** [3] - 28:7, 30:10, 30:13
**regard** [1] - 6:6
**regarding** [3] - 4:5, 4:13, 12:2
**regardless** [1] - 21:4
**Registered** [1] - 43:16
**Reinert** [3] - 6:8, 22:3, 22:7
**related** [3] - 39:18, 40:15, 43:8
**relative** [1] - 43:9
**release** [13] - 3:10, 3:11, 3:12, 3:13, 16:8, 25:2, 25:12, 31:3, 31:16, 31:18, 34:24, 34:25, 35:4

**released** [1] - 30:24
**relevant** [1] - 12:4
**remain** [1] - 26:5
**remained** [1] - 5:18
**remains** [1] - 35:22
**remanded** [1] - 35:20
**remarkably** [1] - 37:13
**remedies** [1] - 41:1
**removed** [2] - 18:17, 18:24
**render** [1] - 25:2
**rendered** [1] - 6:16
**report** [9] - 3:23, 4:2, 5:23, 6:24, 7:3, 7:11, 7:14, 8:22, 35:14
**Report** [2] - 2:14, 11:20
**reported** [1] - 43:4
**Reporter** [5] - 1:24, 43:2, 43:15, 43:16, 43:16
**represent** [1] - 41:21
**represented** [2] - 2:7, 2:9
**request** [2] - 24:17, 38:17
**reserve** [1] - 6:9
**residential** [1] - 34:21
**resolution** [2] - 6:19, 22:3
**resolved** [4] - 4:19, 6:18, 6:20, 22:25
**respect** [1] - 28:20
**respond** [1] - 13:1
**response** [1] - 11:24
**responsibility** [7] - 10:9, 10:19, 17:25, 19:5, 26:8, 26:11, 26:12
**responsible** [1] - 9:1
**rest** [3] - 33:13, 33:18, 34:2
**restitution** [1] - 35:18
**restrictions** [1] - 31:10
**result** [2] - 10:22, 11:16
**resulted** [1] - 11:4
**revealing** [1] - 5:24
**review** [2] - 3:23, 41:3
**reviewed** [2] - 11:19, 11:20
**revocation** [1] - 16:8
**rifles** [1] - 13:23
**rights** [2] - 18:7, 19:7
**risk** [1] - 16:18
**RMR** [1] - 1:23
**robbery** [1] - 15:23
**role** [4] - 5:12, 5:19, 9:21, 9:23

**room** [2] - 20:5, 32:25
**run** [1] - 34:13

**S**

**salt** [1] - 21:6
**sample** [1] - 35:9
**satisfied** [1] - 40:19
**saw** [1] - 4:17
**scenarios** [1] - 30:7
**scheme** [2] - 22:24, 23:12
**school** [1] - 19:16
**scope** [1] - 16:5
**score** [3] - 15:13, 30:7, 30:9
**scored** [1] - 10:25
**SE** [3] - 1:11, 1:15, 43:3
**seal** [2] - 12:11, 12:15
**sealed** [3] - 12:10, 12:17, 43:7
**seated** [2] - 2:2, 26:5
**second** [3] - 18:2, 19:13, 33:3
**secondly** [1] - 19:15
**Section** [9] - 9:4, 9:9, 9:13, 9:22, 10:9, 10:13, 26:21, 34:8, 40:22
**section** [3] - 17:13, 17:14, 39:25
**Sections** [2] - 2:20, 3:1
**security** [1] - 34:18
**see** [6] - 33:1, 33:14, 34:5, 38:14, 38:25, 42:5
**seeking** [3] - 4:8, 9:16, 40:22
**seem** [2] - 30:16, 31:9
**seized** [1] - 13:24
**sense** [1] - 27:22
**sentence** [22] - 3:4, 3:9, 11:6, 13:5, 13:8, 13:14, 14:25, 16:25, 25:10, 25:25, 26:17, 27:10, 27:17, 27:22, 28:1, 32:1, 32:8, 32:11, 34:14, 41:9, 41:10, 41:18
**Sentencing** [2] - 22:20, 24:3
**sentencing** [17] - 2:6, 4:5, 4:6, 4:13, 7:17, 7:19, 8:3, 8:5, 9:14, 11:22, 12:2, 17:21, 22:24, 23:10, 26:19, 32:11, 33:5
**separate** [2] - 2:23, 43:7
**September** [2] - 2:15, 16:11
**serious** [4] - 17:17, 27:12, 30:19, 30:20
**seriousness** [3] - 17:9, 30:11, 30:13
**served** [7] - 3:8, 34:13, 35:3, 39:1, 39:18, 40:4, 40:15
**services** [1] - 41:20
**set** [4] - 35:11, 39:25, 43:7, 43:11
**seven** [1] - 27:9
**seven-year** [1] - 27:9
**Seventh** [3] - 1:10, 1:15, 43:3
**several** [1] - 6:12
**sexual** [2] - 18:23, 20:24
**shared** [1] - 24:16
**Shawn** [1] - 2:4
**SHAWN** [1] - 1:6
**shorthand** [1] - 43:4
**Shorthand** [3] - 1:24, 43:2, 43:15
**show** [2] - 14:2, 14:6
**sidebar** [1] - 12:14
**significant** [4] - 14:21, 24:17, 24:19, 25:9
**similar** [1] - 16:1
**simple** [1] - 15:21
**single** [8] - 19:4, 19:23, 21:2, 22:1, 23:2, 23:15, 24:1, 25:15
**sitting** [1] - 20:3
**situation** [3] - 19:23, 20:17, 23:22
**six** [1] - 2:16
**six-count** [1] - 2:16
**slowing** [1] - 30:16
**smart** [1] - 21:11
**snort** [1] - 19:12
**someone** [5] - 13:22, 14:5, 14:6, 14:12, 18:6
**sorry** [2] - 4:22, 39:7
**sought** [1] - 14:20
**special** [3] - 3:19, 35:12, 35:16
**specific** [2] - 16:19, 22:4
**specifically** [1] - 17:1
**spend** [1] - 34:3
**spent** [1] - 39:9
**spoken** [1] - 6:5
**stacy** [1] - 1:21
**Stacy** [1] - 2:11
**stand** [1] - 26:6
**standard** [1] - 35:11
**started** [2] - 29:3, 30:24
**State** [2] - 20:13, 43:2
**state** [3] - 35:6, 39:10, 40:3
**State's** [1] - 20:10
**STATES** [2] - 1:1, 1:3
**States** [25] - 1:13, 1:14, 1:15, 1:21, 2:3, 2:7, 2:8, 2:12, 2:20, 2:25, 3:22, 5:16, 13:12, 16:24, 22:19, 22:20, 22:23, 23:10, 24:3, 26:20, 34:8, 35:16, 35:21, 36:5, 40:21
**statute** [3] - 3:2, 39:16, 40:8
**statutes** [1] - 3:15
**statutory** [1] - 25:1
**stepfather** [2] - 18:15, 18:17
**still** [1] - 11:15
**stipulate** [1] - 17:14
**stipulated** [1] - 23:18
**stipulation** [2] - 4:21, 5:15
**stipulations** [1] - 6:9
**stop** [1] - 29:23
**Street** [1] - 1:19
**strongly** [1] - 28:13
**structure** [2] - 25:4, 31:5
**stuff** [2] - 26:10, 36:25
**stun** [1] - 13:25
**STURDEVANT** [1] - 36:8
**Sturdevant** [3] - 1:21, 2:12, 36:7
**subsequently** [1] - 6:17
**substance** [5] - 29:1, 29:8, 34:23, 35:8, 36:24
**substantial** [1] - 15:9
**successfully** [2] - 14:10, 21:16
**suffers** [1] - 20:13
**sufficient** [5] - 21:10, 25:11, 26:18, 29:9, 32:9
**sugar** [1] - 26:11
**sugar-coating** [1] - 26:11
**suggestion** [1] - 27:21
**Suite** [1] - 1:19
**summarized** [1] - 10:25
**supervised** [11] - 3:10, 3:12, 3:13, 25:2, 25:12, 31:3, 31:16, 31:18, 34:25, 35:4
**supervision** [4] - 16:6, 31:8, 35:11, 43:5
**support** [3] - 11:25, 14:24, 24:7
**surprised** [1] - 21:8
**surprising** [2] - 28:19, 28:24
**sympathy** [1] - 32:17
**system** [3] - 16:4, 16:22, 23:14

**T**

**tack** [1] - 25:12
**tamping** [1] - 37:13
**Tasers** [1] - 13:25
**taught** [1] - 19:11
**telephone** [1] - 2:11
**ten** [5] - 19:15, 29:5, 31:16, 31:21
**tend** [1] - 8:4
**term** [11] - 3:9, 24:22, 25:2, 25:13, 31:16, 31:18, 34:11, 34:25, 35:1
**terms** [2] - 31:8, 31:13
**Terre** [1] - 36:14
**testimony** [1] - 43:4
**THE** [49] - 1:1, 1:1, 2:2, 3:25, 4:4, 4:12, 4:15, 4:18, 4:22, 4:25, 5:21, 6:21, 7:1, 7:2, 7:4, 7:5, 7:7, 7:8, 7:12, 7:13, 7:15, 7:16, 7:21, 7:22, 7:25, 8:1, 8:14, 8:15, 10:17, 12:7, 12:9, 12:19, 17:5, 25:19, 26:7, 26:15, 36:1, 36:7, 36:9, 36:17, 39:4, 39:15, 41:6, 41:25, 42:1, 42:3, 42:4, 42:10, 42:12
**themselves** [2] - 17:19, 30:4
**they've** [2] - 21:19, 21:20
**third** [2] - 10:15, 19:13
**threat** [1] - 4:8
**threaten** [1] - 14:5
**threats** [1] - 25:5
**three** [10] - 2:16, 3:14, 9:20, 9:24, 10:18, 13:23, 29:20, 35:2, 36:15
**three-level** [1] - 9:20
**Title** [5] - 2:20, 2:25, 26:20, 34:8, 40:21
**today** [5] - 7:13, 19:21, 20:21, 26:22, 42:2
**today's** [2] - 11:18, 12:5
**together** [1] - 35:12
**total** [6] - 3:20, 10:21, 10:22, 11:7, 11:11, 11:14
**totally** [2] - 21:12, 24:6
**track** [1] - 19:24
**trafficking** [1] - 27:7
**transcript** [2] - 43:6, 43:7
**treatment** [4] - 23:8, 29:7, 34:22, 34:23
**tried** [2] - 19:17, 29:6
**true** [1] - 43:6
**try** [3] - 31:4, 37:1, 37:5
**trying** [1] - 40:10
**Tucker** [3] - 1:23, 43:2, 43:15
**turn** [4] - 8:16, 33:6, 33:21, 33:25
**turning** [2] - 15:8, 26:23
**twelve** [3] - 15:11, 15:15, 29:24
**two** [17] - 9:6, 9:11, 9:24, 9:25, 10:8, 11:6, 15:16, 16:14, 20:3, 20:4, 21:6, 28:6, 29:21, 36:10, 38:14, 38:18, 38:21
**two-level** [4] - 9:6, 9:11, 9:25, 10:8
**type** [1] - 17:21
**typewriting** [1] - 43:5

**U**

**U.S** [4] - 1:10, 38:16, 38:25, 43:3
**ultimate** [2] - 27:17, 28:1
**ultimately** [3] - 28:18, 40:19, 41:3
**unconditionally** [1] - 19:6
**uncontested** [1] - 28:9
**under** [30] - 3:15, 6:16, 9:3, 9:9, 9:12, 9:17, 9:21, 10:4, 10:9, 10:13, 10:19, 10:21, 11:6, 11:13, 12:11, 12:15, 15:18, 17:8, 17:22, 24:10, 27:8, 27:15, 27:17, 27:19,

27:24, 28:18, 30:7, 39:10, 40:21, 43:5
**underrepresented** [1] - 21:23
**understated** [2] - 15:17, 29:25
**understatement** [1] - 30:5
**understood** [2] - 4:25, 5:21
**unhappy** [1] - 41:8
**uniformity** [1] - 23:13
**unique** [1] - 17:20
**UNITED** [2] - 1:1, 1:3
**United** [25] - 1:13, 1:14, 1:15, 1:21, 2:3, 2:7, 2:8, 2:12, 2:20, 2:25, 3:22, 5:16, 13:12, 16:23, 22:19, 22:20, 22:23, 23:10, 24:3, 26:20, 34:8, 35:16, 35:21, 36:5, 40:21
**unlawfully** [1] - 35:7
**unreasonable** [2] - 8:4, 8:7
**unscored** [3] - 15:10, 15:15, 15:16
**up** [28] - 3:4, 3:6, 3:11, 3:13, 3:17, 10:20, 12:10, 19:6, 19:13, 22:18, 22:19, 24:7, 26:6, 28:20, 29:14, 32:18, 32:22, 33:1, 37:7, 37:22, 38:6, 38:7, 39:7, 39:11, 39:21, 40:6, 41:17
**upward** [2] - 30:5, 30:9

**V**

**value** [2] - 18:4, 18:5
**variance** [13] - 11:23, 12:20, 12:22, 12:24, 13:4, 13:13, 16:25, 21:19, 24:8, 24:17, 24:21, 25:9, 32:6
**variances** [1] - 22:1
**verified** [1] - 15:6
**versus** [1] - 2:4
**VI** [1] - 15:10
**via** [1] - 1:21
**victim** [2] - 14:15
**VICTOR** [1] - 1:6
**Victor** [1] - 2:4
**view** [3] - 4:6, 29:25, 37:6
**views** [1] - 13:4
**violate** [1] - 31:13

**violation** [2] - 2:19, 2:25
**violations** [1] - 16:7
**violence** [7] - 4:9, 5:12, 5:18, 9:12, 14:20, 15:20, 27:2
**violent** [5] - 14:11, 28:23, 29:20, 29:21, 30:21
**virtue** [2] - 4:20, 22:23
**vocational** [2] - 23:7, 24:11
**vs** [1] - 1:5

**W**

**waking** [1] - 25:15
**walker** [20] - 4:22, 4:23, 5:22, 6:22, 7:6, 7:9, 7:17, 12:7, 13:6, 17:6, 25:20, 27:13, 28:12, 29:1, 31:1, 31:2, 32:2, 36:9, 36:17, 42:6
**WALKER** [13] - 1:18, 4:16, 4:19, 4:24, 5:5, 6:3, 12:8, 17:7, 36:10, 38:12, 39:6, 41:5, 42:8
**Walker** [2] - 1:19, 2:10
**walker's** [2] - 29:10, 30:1
**wants** [4] - 23:13, 23:23, 25:3, 34:4
**warrant** [3] - 39:1, 39:2, 39:8
**warranted** [2] - 24:12, 25:10
**warrants** [1] - 24:19
**waste** [1] - 34:5
**wasting** [1] - 32:21
**weapon** [1] - 9:8
**weapons** [7] - 13:21, 13:24, 14:1, 14:8, 14:21, 16:2, 30:22
**weekly** [1] - 13:19
**weigh** [2] - 14:25, 18:11
**weighed** [2] - 20:7, 20:8
**WHEREOF** [1] - 43:11
**Williams** [1] - 1:10
**wishes** [1] - 13:7
**withdrawing** [1] - 5:3
**withdrawn** [1] - 5:18
**WITNESS** [1] - 43:11
**woman** [1] - 15:22
**wondering** [1] - 39:12
**world** [1] - 20:17
**written** [3] - 40:13,

41:13, 41:16
**wrongs** [3] - 18:7, 19:7, 26:13

**Y**

**year** [6] - 27:9, 31:16, 31:18, 38:22, 39:9, 39:13
**years** [19] - 3:6, 3:11, 3:14, 15:3, 19:10, 19:12, 19:15, 20:4, 21:6, 29:8, 30:15, 31:20, 31:21, 31:22, 32:15, 35:1, 35:2